UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA (MIAMI)

|  |  |
|---|---|
| IN RE: | . Case No. 23-18321-lmi |
|  | . Chapter 11 |
| PIONEER INTER-DEVELOPMENT, | . |
| INC., | . 301 North Miami Avenue |
|  | . Miami, Florida 33128 |
| Debtor. | . |
|  | . Monday, March 11, 2024 |
| . . . . . . . . . . . . . . . . . | . 2:31 p.m. |

TRANSCRIPT OF CONFIRMATION HEARING RE CHAPTER 11
SMALL BUSINESS SUBCHAPTER V PLAN FILED BY DEBTOR PIONEER
INTER-DEVELOPMENT, INC. (61);
MOTION TO EXTEND TIME TO FILE PROOF OF CLAIM AGAINST PIONEER
INTER-DEVELOPMENT, INC. FILED BY CREDITOR HABER LAW, P.A. (80);
MOTION TO CONVERT CHAPTER 11 CASE TO CHAPTER 7 FILED BY
CREDITORS ANA CORDERO, PATRICIO CORDERO, PALMETTO WAREHOUSES,
LLC, MASON SHARPE, SAMANTHA SHARPE, TREVOR TAYLOR (89);
MOTION FOR RELIEF FROM STAY FILED BY CREDITOR
HABER LAW, P.A. (79);
EXPEDITED MOTION TO WITHDRAW AS ATTORNEY OF RECORD FILED BY
DEBTOR PIONEER INTER- DEVELOPMENT, INC. (94);
MOTION FOR CONTEMPT FILED BY DEBTOR PIONEER
INTER-DEVELOPMENT, INC. (77);
FIRST APPLICATION FOR COMPENSATION AS SUBCHAPTER V TRUSTEE FOR
ALEIDA MARTINEZ-MOLINA, ATTORNEY-TRUSTEE, PERIOD: 11/15/2023 TO
2/12/2024, FEE: $11,295.00, EXPENSES: $0 FILED BY ATTORNEY
ALEIDA MARTINEZ-MOLINA (71)
BEFORE THE HONORABLE LAUREL M. ISICOFF
CHIEF UNITED STATES BANKRUPTCY COURT JUDGE


Audio Operator:          Noemi Sanabria, ECR

Transcription Company:   Access Transcripts, LLC
                         10110 Youngwood Lane
                         Fishers, IN 46048
                         (855) 873-2223
                         www.accesstranscripts.com

     Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

2

APPEARANCES:

For the Debtor:                    Frank & De La Guardia
                                   By:  MICHAEL A. FRANK, ESQ.
                                   2000 Northwest 89th Place
                                   Suite 201
                                   Doral, FL 33172
                                   (305) 443-4217


For Trevor Taylor, Ana            Shutts & Bowen LLP
Cordero, Patricio                 By:  VINCENT F. ALEXANDER, ESQ.
Cordero, Samantha                 201 East Las Olas Boulevard
Sharpe, Mason Sharpe,             Suite 2200
Palmetto Warehouses,              Fort Lauderdale, FL 33301
LLC:                              (954) 524-5505


For the Office of the             United States Department of Justice
United States Trustee:            By:  DANIEL L. GOLD, ESQ.
                                  51 SW 1 Avenue
                                  Suite 1204
                                  Miami, FL 33130
                                  (305) 536-6693


For the Subchapter V              AXS Law Group PLLC
Trustee:                          By:  ALEIDA MARTINEZ-MOLINA, ESQ.
                                  2121 NW 2nd Avenue
                                  Suite 201
                                  Miami, FL 33127
                                  (305) 297-1878


For Haber Law, P.A.:              Haber Law, P.A.
                                  By:  CHRISTOPHER M. UTRERA, ESQ.
                                  251 NW 23 Street
                                  Miami, FL 33131
                                  (305) 379-2400

1

1          (Proceedings commence at 2:31 p.m.)

2                THE CLERK:  All rise.

3                THE COURT:  Good afternoon.  Please be seated.

4                All right.  We're here this afternoon on the matter

5   of Pioneer Inter-Development, Inc., 23-18321.  Before I take

6   appearances, I just want to give a reminder to those who have

7   been here before, and for those who have not, a roadmap to the

8   way we do things here.

9                One, this is a recorded proceeding.  Only the Court

10  may record the proceeding.  Any other recording is a violation

11  of Florida law and will subject the violator to sanctions by

12  this Court.

13               Second, speak slowly and clearly since it is a

14  recorded proceeding, and do not interrupt each other.  The

15  recording can only record one voice at a time, and it's also

16  rude.

17               Three, everyone will get a chance to speak.  If you

18  have more to say, you can stand up at the conclusion of someone

19  else making their remarks.  As I said, everyone will get a

20  chance to speak.  No calling out, making faces, et cetera.

21               Finally, because we are in the courtroom, please

22  remember when you make your appearance, spell your last name

23  for the record.  Unlike on Zoom when you have typed your name,

24  when you're in the courtroom, you need to spell your last name

25  and also spell the last names of your clients, if they are

1    here, or the client representative.

2            So with that, we'll get started.  Mr. Frank, please

3    make your appearance.

4            MR. FRANK:  Good afternoon.  Michael Frank,

5    F-R-A-N-K, on behalf of the debtor, Pioneer.

6            THE COURT:  Okay.  And do you have the client

7    representative here, Mr. Frank?

8            MR. FRANK:  Yes.  Mr. Mendez is here.

9            THE COURT:  Could you please identify and spell his

10   last -- say his name and spell his last name.

11           MR. FRANK:  Frank Mendez, M-E-N-D-E-Z, I believe it

12   is.

13           THE COURT:  All right.  Thank you.

14           All right, Mr. Alexander, are you making an

15   appearance?  I assume so.

16           MR. ALEXANDER:  Good afternoon, Your Honor.  Vincent

17   Alexander, A-L-E-X-A-N-D-E-R, on behalf of creditors Trevor

18   Taylor, Ana and Patricio Cordero, Samantha and Mason Sharpe,

19   and Palmetto Warehouses, LLC.

20           THE COURT:  All right.  Thank you.

21           Mr. Gold?

22           MR. GOLD:  Good afternoon, Your Honor.  Dan Gold,

23   G-O-L-D, for the U.S. Trustee.

24           THE COURT:  All right.  Ms. Martinez-Molina?

25           MS. MARTINEZ-MOLINA:  Good afternoon, Your Honor.  As

1  Subchapter V trustee, Aleida Martinez-Molina, M-A-R-T-I-N-E-Z,

2  M-O-L-I-N-A.

3         MR. UTRERA:  And good afternoon, Your Honor.

4  Christopher Utrera, U-T-R-E-R-A, on behalf of Haber Law, P.A.

5         THE COURT:  All right.  Mr. Winker, are you

6  observing, or did you wish to make an appearance?

7         MR. WINKER:  Good afternoon, Your Honor.  David

8  Winker, W-I-N-K-E-R.  I'm just observing.  I'm a personal

9  attorney for Mr. Mendez and general counsel for Pioneer, the

10 debtor.

11        THE COURT:  Okay.  Thank you, Mr. Winker.

12        Anyone else wish to make an appearance?

13        Okay.  So we're here on confirmation of the plan.  We

14 also have a motion to extend time that was filed by Mr. Utrera.

15 I have a motion to convert that was filed by Mr. Alexander on

16 behalf of his clients; motion for relief from stay filed by

17 Haber Law; a motion to withdraw filed by Mr. Frank; a motion

18 for contempt filed by Mr. Frank; and a fee application for

19 Ms. Martinez-Molina.

20        So Mr. Frank, where are we starting?

21        MR. MENDEZ:  Your Honor, I'm not sure if I also have

22 to stand up and -- I can do it at a later time.

23        THE COURT:  No, you don't need to make an appearance,

24 Mr. Mendez.  Thank you.

25        MR. MENDEZ:  I would really like to show Your Honor

1    all the documents in response to Mr. Frank's request to

2    withdraw.

3              THE COURT:  Okay.

4              MR. MENDEZ:  It's very important for my -- so that my

5    rights are represented in this court.

6              THE COURT:  Okay.  Mr. --

7              MR. MENDEZ:  So I don't know if I have to appear to

8    Your Honor and review these things with you.

9              THE COURT:  Okay.  Mr. Mendez, we'll get there.

10   How's that?

11             MR. MENDEZ:  All right, thank you.

12             THE COURT:  I'll make a note that you'd like to speak

13   to the Court at some point.

14             MR. MENDEZ:  Thank you, Your Honor.

15             THE COURT:  Okay?

16             MR. MENDEZ:  Thank you so much.

17             THE COURT:  All right, thank you.

18             MR. FRANK:  Good afternoon, Judge.  Michael Frank

19   again.  With reference to the motion for contempt, there's been

20   an agreement signed, which I found out about today that it was

21   signed by my client and that the motion for contempt would be

22   withdrawn based upon that they are going to hand over all the

23   documents that they have in their possession.  They're going to

24   not --

25             THE COURT:  Okay, stop.  Stop.

```
 1              MR. FRANK:  Okay.

 2              THE COURT:  Okay.  With respect to the motion for

 3  contempt which was filed by you, ECF 77, who entered into an

 4  agreement with whom, and who agreed to do what, because you're

 5  using pronouns --

 6              MR. FRANK:  I'm sorry.

 7              THE COURT:  -- and I have no idea who you're talking

 8  about.

 9              MR. FRANK:  Yes, there was an agreement spread around

10  between myself, Ms. Aleida Martinez-Molina, and Mr. Kucera

11  (phonetic).  That agreement settled the issues that I have with

12  them, meaning the Haber Law firm, that they are going to turn

13  over $70,000-something -- and correct me if I'm wrong -- to the

14  Chapter V -- Subchapter V trustee to be held in trust pending

15  what happens here today on the rest of the issues.

16              I think it's a good deal for the estate.  Like I

17  said, I haven't talked to Mr. Mendez in over a week.  We sent

18  that out to him last Monday.  I was told just about an hour ago

19  that Mr. Mendez actually signed that agreement to do that.  So

20  as far as I'm concerned, based upon that signed agreement, I

21  will have to withdraw that motion for contempt.

22              THE COURT:  Okay, got it.  All right, thank you,

23  Mr. Frank.

24              All right, Ms. Martinez-Molina, can you provide any

25  more information on this?
```

1          MS. MARTINEZ-MOLINA:  Aleida Martinez-Molina as

2    Subchapter V trustee.  Yes, the motion for contempt seems to be

3    moot to the extent that Haber Law has agreed to do whatever it

4    is that the debtor requested that they do that prompted the

5    motion for contempt.

6          THE COURT:  Okay, thank you.

7          Mr. Utrera?

8          MR. UTRERA:  Yes, Your Honor.  Christopher Utrera on

9    behalf of Haber Law.  Correct, there was a settlement

10   agreement.  Part of that agreement required the motion for

11   contempt to be withdrawn based upon various other promises made

12   in both directions.  Nevertheless, as to the motion for

13   contempt, the basis for the motion, which was the arguably

14   post-petition filings of the notice of a charging lien in state

15   court in violation of an automatic stay, that issue is moot,

16   nevertheless, as the basis for the motion because those notices

17   were -- have since been withdrawn.

18         But to your point, Your Honor, yes.  The settlement

19   agreement has been signed by all parties.  Part of that

20   settlement agreement included the withdrawal of that motion.

21         THE COURT:  Okay.  And are you the person who advised

22   Mr. Frank that the document had been signed?

23         MR. UTRERA:  Mr. Frank?  No.

24         THE COURT:  So who advised you that the document had

25   been signed?

1           MR. UTRERA:  Our firm signed it yesterday

2   afternoon --

3           THE COURT:  Mm-hmm.

4           MR. UTRERA:  -- David Haber on behalf of the law

5   firm.  And I learned that Mr. Mendez signed it yesterday

6   afternoon.  We had been prepared to sign it -- I think

7   Mr. Frank said for over a week, and that is true.  We were just

8   waiting for confirmation that the debtor would sign it and

9   be -- acknowledge the settlement agreement.  I learned

10  yesterday that he [sic] did.  We went ahead and signed it and

11  gave it to the trustee.

12          THE COURT:  Okay.  You do know the debtor is an "it"

13  not a "he"?

14          MR. UTRERA:  I apologize, Your Honor.  Yes.

15          THE COURT:  Okay, and you do know the debtor is

16  represented by counsel?

17          MR. UTRERA:  Yes.

18          THE COURT:  And you do know that you may not

19  communicate directly with a party represented by counsel

20  without the counsel's authority?

21          MR. UTRERA:  I want to make sure -- that is

22  abundantly clear.  I -- we have never communicated directly

23  with the debtor.

24          THE COURT:  Okay.  All right, thank you.

25          MR. UTRERA:  Well, in the course of these bankruptcy

1  proceedings.  Historically, of course, we were counsel for the

2  debtor.

3          THE COURT:  Understood.

4          MR. FRANK:  I learned from the Sub V trustee about 20

5  minutes ago that it was signed.  I was not told.

6          THE COURT:  Okay, so Mr. Frank, based on that, do you

7  wish to withdraw?  Or do you agree that the motion for contempt

8  will be withdrawn?

9          MR. FRANK:  Absolutely.

10         THE COURT:  Okay.  Then I'll note that it will be

11 withdrawn.  And you'll take care of that not -- no matter what

12 I rule on the -- your motion to withdraw, yes?

13         MR. FRANK:  Absolutely, Judge.

14         THE COURT:  Okay, thank you.  Okay.  All right, well,

15 that takes care of that.

16         So we have your motion to withdraw, Mr. Frank.  I

17 assume that based on the statements that you've made, you wish

18 to go forward with that?  And if I do so, of course, that

19 shortens the rest of the hearing because then the debtor is

20 unrepresented.

21         MR. FRANK:  Michael Frank on behalf of the debtor

22 again.  I've talked to U.S. Trustee and to the movant that I

23 would agree to stay in until the Chapter 7 trustee -- if that's

24 what happens -- gets appointed to keep them up to date and give

25 them whatever else they want.  But I cannot represent the

1    interest of the debtor other than to make sure that if a

2    Chapter 7 trustee gets appointed, then I will help him get his

3    bearings on what the case is about and get him any information

4    that I have.

5          THE COURT:  Okay, "him" meaning who?

6          MR. FRANK:  The -- whoever the -- if a Chapter 7

7    trustee is appointed -- I don't know who it is right now -- if,

8    in fact, it gets converted to a 7.

9          THE COURT:  Okay.

10         MR. FRANK:  So the other way I think it could be done

11   is I could withdraw as to representation but stay in the case

12   for the sole purpose of helping any 7 trustee that if and when

13   gets appointed, to again, help him get his bearings straight.

14         THE COURT:  So my understanding is that you're not in

15   a position today to respond to the motion for dismissal or

16   conversion that was filed by Mr. Alexander on behalf of his

17   clients?

18         MR. FRANK:  Oh, I'm -- I've read it thoroughly, and

19   as part of that motion -- and I've talked to counsel --

20         THE COURT:  Okay.  What I'm trying to understand,

21   Mr. Frank, is that you've just told me that you've not spoken

22   to Mr. Mendez in a week, that Mr. Mendez took action on behalf

23   of the debtor without advising you that he had done so.  My

24   question to you is can we go forward on the motion to convert

25   today in the absence of your having conferred with Mr. Mendez?

1  That's the question that I have.

2          MR. FRANK:  Judge, just so you know, over the past

3  seven to eight days, we have texted, we have emailed, we have

4  called.  No response until Sunday morning.  I know what's going

5  on and -- but because I can't help him -- I'm sorry -- I can't

6  help the debtor help themselves because I have no documents, I

7  have no response --

8          THE COURT:  I -- that -- I don't want to go there

9  right now.

10          MR. FRANK:  Okay.

11          THE COURT:  I just want you to answer my question.

12          MR. FRANK:  Can I go forward?  I guess I can't.

13          THE COURT:  Okay.  Do you need to have five minutes

14  to step outside and talk to Mr. Mendez before we proceed with

15  the motion to convert?

16          MR. FRANK:  I've talked to Mr. Mendez before the

17  hearing started, and I can't because now everything is my

18  fault.  So it's not going to be productive.

19          THE COURT:  Okay.  Let me hear from

20  Ms. Martinez-Molina.

21          MS. MARTINEZ-MOLINA:  Good afternoon, Your Honor.

22  Aleida Martinez-Molina, Subchapter V trustee.  Is there a

23  specific question that I may be able to shed some light on?

24          THE COURT:  I just want to know your take on all of

25  this.  I have a situation that based -- just facially, because

1  obviously, I haven't had any evidentiary hearing or been walked

2  through a proffer by Mr. Alexander -- that appears to be ripe

3  for dismissal or conversion.  So I just wanted whatever insight

4  you have since, obviously, Mr. Frank and the principal of the

5  debtor are at odds with one another.  I would like to have your

6  insights.

7          MS. MARTINEZ-MOLINA:  Yes, so my understanding -- and

8  the parties can correct me if I am wrong -- is that the debtor,

9  through the debtor's principal, understand that this case is

10  not in a position to move forward as a Subchapter V and that

11  they recognize that there is a motion to dismiss or convert and

12  that they recognize the likely result today would be a motion

13  to convert.  And it is my understanding -- and again, the

14  debtor's principal can correct me if I'm wrong -- is that

15  they're not going to contest the motion.

16          THE COURT:  Okay, thank you.

17          All right, so Mr. Frank, are you able to confirm that

18  with Mr. Mendez?

19          MR. FRANK:  I believe I can't confirm that.

20          THE COURT:  Okay.

21          MR. FRANK:  But again, because I haven't had a return

22  phone call in a week.

23          THE COURT:  Okay.  Mr. Mendez is in the back of the

24  courtroom --

25          MR. FRANK:  Right.

1            THE COURT:  -- shaking his head no.  So I'm going to

2  ask Mr. Frank, Ms. Martinez-Molina, and Mr. Mendez to go out

3  into the attorneys' room.  We're going to take a five-minute

4  break, and when we come back, I want an answer.

5            MR. FRANK:  Got it.

6            THE COURT:  Okay?  All right.  It's 2:47, so at 2:52.

7  And I have the -- one of these fancy watches with a timer, so

8  five minutes.  Okay?

9            THE CLERK:  All rise.

10       (Recess taken at 2:47 p.m.)

11       (Proceedings resumed at 3:02 p.m.)

12            THE CLERK:  All rise.

13            THE COURT:  All right.  Thank you.  Please be seated.

14            All right.  I understand, Mr. Frank, that you left

15  the meeting early, so should I ask the Subchapter V trustee to

16  provide me with an update, or are you prepared to do so?

17            MR. FRANK:  I'm not prepared to do so, Judge, because

18  of what was said to me in the meeting room.

19            THE COURT:  Okay, so let me hear from Ms. Aleida

20  Martinez.

21            MS. MARTINEZ-MOLINA:  Aleida Martinez-Molina,

22  Subchapter V trustee.  Your Honor, it appears to be the case

23  that debtor's counsel and the debtor have a difficult time

24  communicating.  It appears to be the case that debtor's counsel

25  cannot represent the position even today of whatever the

1  debtor's position may be.  The debtor would like to make a

2  statement to the Court, but at the end of the day -- and again,

3  the debtor --

4          THE COURT:  Debtor's principal.

5          MS. MARTINEZ-MOLINA:  -- the debtor's principal, yes,

6  can correct me if I'm wrong, but at bottom line is that they're

7  asking for a week or a very short period of time to retain

8  counsel that they've reached out to.  I understand there is a

9  meeting tomorrow with prospective new counsel to articulate the

10  debtor's position.

11          THE COURT:  Okay.  All right.  Let's go to the motion

12  to withdraw, Mr. Frank.

13          MR. FRANK:  Michael Frank, F-R-A-N-K, on behalf of

14  the debtor.

15          THE COURT:  All right.

16          MR. FRANK:  As I told opposing counsel, I would agree

17  to stay in for administrative purposes only because the 7

18  trustee, if that's what happens today, is going to want

19  information from me, but I can't represent the debtor based

20  upon what's been told by me to me by the debtor's principal.

21  And under Florida Bar rules, I just can't do it.

22          THE COURT:  Okay.  All right.  Anyone else wish to

23  say anything with respect to the motion to withdraw?  Mr. Gold?

24          MR. GOLD:  Yes, thank you, Your Honor.

25          Good afternoon.  Dan Gold for the U.S. Trustee.  I

1  appreciate Mr. Frank making the accommodation that I would've

2  asked for, but he made it without me having to ask for it,

3  which I always appreciate which is having him stay in for the

4  administrative purpose of enabling conversion and for the

5  debtor entity to comply with what would be the Court's standard

6  form order there.

7          I don't know what this does in terms of the landscape

8  for the motion to convert/motion to dismiss other than to say

9  Mr. Frank would not, in this hearing, it's my understanding,

10  represent the debtor for purposes of whatever else might go on

11  today.

12          Whatever the underlying facts are that led Mr. Frank

13  and the debtor to have this irreconcilable difference, the

14  relationship is broken.  So I think Mr. Frank does have to

15  withdraw, and I do appreciate the offer of the accommodation,

16  and I would ask the Court to approve that accommodation for

17  whatever period of time is necessary, assuming that the debtor

18  entity does not get replacement counsel, in which case, I think

19  Mr. Frank is necessarily off the hook, unless there is a unique

20  set of documents or information that he might have that would

21  enable the conversion process.  But again, don't want to get

22  ahead of myself.

23          THE COURT:  Okay.  Thank you.

24          Mr. Alexander?

25          MR. ALEXANDER:  Good afternoon, Your Honor.  Again,

1  Vincent Alexander.  As we explained to Mr. Frank prior to

2  today's hearing, we don't oppose the withdrawal, but we did

3  want those conditions with respect to cooperation and turnover

4  because this has been a case where it's been like pulling teeth

5  to try and get documents.  I know I came in late to this case,

6  but the cooperation from the debtor's side has not been very

7  forthcoming.  And our concern is the debtor not being

8  represented, what will happen, because we've seen what happens

9  while it does have counsel.

10        And so we're very concerned with being in a situation

11  where the case is not converted and there's no cooperation

12  still going forward, because this Court has entered orders

13  requiring compliance with certain deadlines prior to the seven

14  or eight days in which Mr. Frank filed his motion to withdraw,

15  and those deadlines have not been complied with.  And so we

16  believe that harms the estate.  And so allowing this to

17  continue to go on, this will bleed into our requests for

18  conversion, we do not think that's appropriate, and we think

19  that the withdrawal with no strings and conditions will

20  prejudice the estate.

21        Obviously, if Mr. Frank has to withdraw based on

22  Florida Bar rules, then certainly, he has to withdraw.  But we

23  do think that the estate needs to be considered with respect to

24  the withdrawal and also the timing of the withdrawal right

25  before a confirmation hearing and a motion to convert that's

1  being scheduled.

2          THE COURT:  Okay, thank you.  All right, Mr. Mendez.

3  You want to talk to me, so you're going to come forward, and

4  I'm going to swear you in because since you're not an officer

5  of the court, I'm going to put you under oath.  And so go ahead

6  and raise your right hand.  Okay?

7          FRANK MENDEZ, DEBTOR'S REPRESENTATIVE, SWORN

8          THE COURT:  Okay, go ahead and tell me what you want

9  to say.

10         MR. MENDEZ:  Your Honor, can I have -- can I have

11 this documentation which I've prepared over the weekend to show

12 the actual facts and backup information as to the dates and

13 items that have been brought up today in front of you,

14 statements, and --

15         THE COURT:  Well, not right now.  Why don't you just

16 tell me what it is that you want to tell me?

17         MR. MENDEZ:  All right.

18         THE COURT:  Okay?

19         MR. MENDEZ:  Number one, it's concerning to me that

20 Mr. Frank can't even spell out my name, and he actually told

21 the Court an incorrect name.  That starts my concern.

22         THE COURT:  Your name isn't Mendez?

23         MR. MENDEZ:  He said Frank Mendez, and then he said

24 not Mendez; he said something else.  And if you can go back and

25 review it, but --

1          THE COURT:  Okay, let's move past that.

2          MR. MENDEZ:  -- I'll move forward.  Mr. Frank was

3  originally questioned by you one day -- and I was here -- how

4  much money he had received in honorary to start the case.  He

5  said about 22,000.  In reality, it was 25,000.

6          Mr. Frank was supposed to, apparently, with what I

7  now know, to file his representation of Pioneer, something that

8  he never did.  That's one of the things.

9          Mr. Frank was -- and I have emails here and

10  information and text messages from me to Mr. Frank saying, hey,

11  I'm sorry, but you know, where's Mr. Davd Winker's submittal of

12  approval by the Court for him to represent me personally and

13  Pioneer Inter-Development, Inc., on all other cases that are

14  ongoing.  He never made that motion.  He promised that he was

15  doing it.  He said that he was going to do it, he was going to

16  do it.  Even my counsel, Mr. Winker, there's an email saying,

17  hey, what's going on.  And I have an email, very specific,

18  requesting Mr. Frank, have you done it?  What's going on?

19  These items are being requested by the Court and counsel,

20  opposing counsel.  Where are all these documents that you

21  promised you were working on that I paid you to work on?

22  There's documentation here that shows emails and fax.

23          Mr. Frank says that I never responded to any of his

24  calls.  I would like the judge, Your Honor, to please request

25  his phone records as to how it shows that he ever, ever once,

1   ever called me personally.  He had people in his office do his

2   work.  Okay?  Not only that, but please ask Mr. Frank to

3   produce documentation that shows that he -- he sent me,

4   personally, any emails other than his people in his office.

5           Mr. Frank has no idea what's going on because I have

6   documentation that shows even after he filed to recuse himself,

7   I was talking to his office unknown -- unbeknown to me that he

8   had filed to recuse himself from the case.  They were telling

9   me they were still working on things, specially my tax returns.

10          THE COURT:  Why would Mr. Frank's office be working

11  on your tax returns?  They're not an accounting firm.

12          MR. MENDEZ:  That's a good question.  During my

13  deposition -- and there was all sorts of, you know -- the

14  debtors, my other counsel, Ms. Aleida was there, present, when

15  he, himself, said the tax returns are completed.

16          THE COURT:  "He" meaning who?

17          MR. MENDEZ:  Mr. Frank, I'm sorry.  Mr. Frank

18  personally said the tax returns are done.  He just has to go by

19  the office, review them and sign them, and we'll supply them to

20  you.  I did go by his office.  I did send him an email, where

21  are my tax returns?  He made this comment, very specific.  It's

22  in my deposition, which Your Honor can look at it, saying that

23  they are done.  And he had been paid to handle that for me

24  because I was in arrears, and I understand maybe I made

25  mistakes, but I was trying to correct any mistakes to show the

1  Court my good faith of getting all these documents.

2          He stood up here today, and he's also told

3  Ms. Aleida, that I never gave him any documents.  How can he be

4  preparing my tax returns if he had no documentation, no bank

5  records?  I have proof -- I have proof that I gave his

6  assistant -- very nice person, by the way, very nice person --

7  his assistant every document.  American Express documents,

8  personal and -- and -- and corporate, all my bank accounts

9  since 19- -- since 2020 from City National, from everywhere.  I

10  gave them all the documentation that they requested for my

11  taxes.  And they were working on it.  Not only were they

12  working on it, but he says, in front of everybody, they're

13  done.  Why don't you ask him, please, where are they.  Where

14  are they?  Because I have an email here, and I'll share this

15  with you, that asks him, hey, please, where's all these

16  documentation?

17          Ms. Aleida Molina had recommended in good faith that

18  we propose a new plan -- a three-year plan or a five-year

19  plan -- to the Court, to the debtors [sic].  He says, yeah, yeah,

20  yeah.  We're going to work on it.  They never did anything

21  about it.  And there's emails from me saying, hey, listen, I

22  hear that if we do a three-year or a five-year plan, the

23  debtors [sic] will -- will know, and the Court will probably

24  approve --

25          THE COURT:  You mean the creditors?

1        MR. MENDEZ:  -- the creditors will know about it and

2   it can be negotiated, and the Court will also have a three-to-

3   five-year plan, suggested by Ms. Aleida Molina who, by the way,

4   has been extremely helpful to me, other than, you know -- she's

5   done more for me in this case than Mr. Frank has done.

6        In front of the -- the -- all the members here that

7   are sitting, the debtor --

8        THE COURT:  Creditors.

9        MR. MENDEZ:  The creditors, I'm sorry.  The

10  creditors, their attorney, my attorney, Ms. Aleida Molina,

11  during my deposition, I turned to Mr. Frank and I said to him,

12  listen, they're asking me very private and confidential

13  questions.  I've never been through a proceeding or a

14  deposition that has to do with bankruptcy.  He turned to me and

15  he let me have a totally disrespective [sic] attitude in front

16  of everyone.  And again, this is something that you can take on

17  with Ms. Aleida Molina, and she can confirm that he was

18  completely disrespectul -- disrespectful to me with -- and all

19  I asked was do they have the right to ask me all these personal

20  and confidential questions.  He blew up at me in front of

21  everybody.

22        So this is not something that I've done anything

23  wrong.  This is a gentleman that -- I don't know.  I can't even

24  ask him a question.  And if, again, please ask him how many

25  calls he made to me, get his phone records, and how many emails

1  that he -- has he responded to himself.  None.  None.  And I

2  have here my emails to him.

3        The motion to withdraw was done on the 5th.  That's

4  when I supposedly got an email.  He knows very well that I

5  don't -- I'm not a computer -- computer-literate person.  I

6  don't review my emails.  I have somebody print them for me.

7  And they know that if they send something to me --

8        THE COURT:  "They" meaning?

9        MR. MENDEZ:  Anyone.  Anyone, including his law firm.

10 If they're going to send me an email, they have to call me and

11 let me know, Frank, we're sending you an email so that I can

12 have my assistant get the email, print it for me, so that I can

13 review it and act on it.  They know very well.

14        So on the 5th, he sends a motion to dismiss which, by

15 the way, if I would've been -- if I --

16        THE COURT:  A motion to dismiss?  To withdraw?

17        MR. MENDEZ:  To recuse himself.

18        THE COURT:  To withdraw.

19        MR. MENDEZ:  To withdraw.

20        THE COURT:  Okay.

21        MR. MENDEZ:  If it would have not been for someone

22 that is monitoring all the cases and would've told me, Frank,

23 do you know that Mr. Frank has recused himself from

24 representing you in the bankruptcy case, I would have never

25 known.  I would have never known.  This hearing would've been

1  taking place, and I would have not been here because I didn't

2  know that there was any other matters regarding this -- this

3  hearing -- or all these hearings today.  He never, never, ever

4  gave me information about the rest of the hearings here.  And I

5  would've left --

6         THE COURT:  Wait.  You didn't know you had a

7  confirmation hearing today?

8         MR. MENDEZ:  No.  And by the way -- by the way, I

9  would like for you to ask Mr. Frank directly to give you

10 documentation, calls, records that show that he had contacted

11 me on this.

12        In addition to that -- this confirmation, apparently

13 there's been documents filed by the debtors.  Right?

14        THE COURT:  The debtors?  The debtors or the

15 creditors?

16        MR. MENDEZ:  They're trying -- I'm sorry.  I'm the

17 debtor.  By the -- by the --

18        THE COURT:  Creditors.

19        MR. MENDEZ:  By the creditors.  It's a Shutts & Bowen

20 representation, a law firm, new documents filed.  Not seen one

21 of them.  Mr. Frank has never even emailed me -- and please get

22 records of it -- has not called me to sit down and have a

23 meeting, to review all those documents that are supposedly in

24 question today, and he sends, in his -- in his memo to you to

25 recuse himself, saying that he's in agreement with the

1   documents that were sent by Shutts & Bowen.  And I'm saying to

2   myself, I haven't even -- how could you agree to something that

3   you haven't even discussed with me or know the facts or -- are

4   they factual?  Are they not factual?  Is it true or is it not

5   true?  I haven't had the opportunity to be represented.  And

6   here we are in a motion that I haven't even seen the documents.

7   I don't know what we're here for.  I mean, I'm just like -- and

8   he never even told me that these things were taking place

9   today.

10          And these are records that I -- I'm providing to the

11  Court for you to realize, and documents that you can ask from

12  him directly to say, here, I did give it to him.  I did offer

13  him the -- the documents.  Here's the documents.  Here's a copy

14  of them.  Here's an email.  Nothing.  Nothing whatsoever.

15          On top of that, I find out that Shutts & Bowen is

16  representing the --

17          THE COURT:  Creditors.

18          MR. MENDEZ:  -- the creditors last week.  And Shutts

19  & Bowen has represented me in the past in a personal capacity

20  and in a corporate capacity of Pioneer Inter-Development, Inc.,

21  which I have documents here to prove it.

22          Has Mr. Franks ever asked me?  Has -- did he sit down

23  and tell me these people are taking over because a -- Kozyak

24  Tropin has recused themself [sic] because they have a huge,

25  huge liability as to conflict of interest?  That's why they

1  recused themselves:  conflict of interest.  Okay?  And they

2  hire a new company that's represented me in the past.

3  Mr. Frank never vetted, checked, called me, said hey, anything?

4  No.

5          I'm the one that now finds out, and I'm saying, hey,

6  what's going on?  My rights are being trampled by everybody and

7  everything in this court -- courtroom.  Obviously, not

8  yourself, Your Honor.  But everybody else from here back, I'm

9  saying to myself, what's going on?  Why am I not -- why don't I

10 have any representation or correct representation?  That's why

11 I asked you to please hear me out, and I appreciate your --

12 your -- your time.

13         The executed settlement that he refers to that he has

14 no idea, no knowledge.  I have an email here from his own firm

15 sending it to me after he had asked to recuse himself.  They

16 send it to me with a note that says, by the way, this is not

17 the final one anyhow.  But I still took the time to execute it.

18 To execute it.  And this was an email on Wednesday, March 6th.

19 It's right here.  And it says, "This is not the final, but it's

20 mostly correct."  It's mostly correct.

21         His office is the one that sent it to me on the 6th.

22 He's saying he has no idea, no knowledge of anything that I

23 signed it.  Well, guess what.  They sent it to me.  It was

24 mostly not correct [sic], and I signed it.

25         But I -- let me go a little further on that item.

1  During my deposition, Samole, Mr. Samole, the bankruptcy

2  trustee, Ms. Aleida, told Mr. Frank very clearly that what

3  Mr. Haber -- what Haber Law was doing was illegal according to

4  the bankruptcy laws.  Mr. -- Mr. Frank took weeks to act on it,

5  and I continued to send him emails saying, listen, my other

6  counsel is trying to do things to represent me on the other

7  cases, and Mr. Frank -- and he can testify -- kept telling

8  him --

9          THE COURT:  "He" meaning Mr. Winker?

10          MR. MENDEZ:  Mr. Winker.  And Mr. Frank told

11  Mr. Winker hold off.  Don't do anything.  Don't do anything

12  until I tell you.

13          Well, Mr. Winker sent him an email, which is here,

14  also, saying hey, where's your motion for me to represent

15  Pioneer?  Where is it?  Because he was supposedly to send a

16  motion including his that he didn't do to have Mr. Winker

17  represent Pioneer.  He never did that.

18          Here I am that I'm trying to represent myself to

19  survive, and I can't even do that because Mr. Frank never sent

20  the requested motions for the Court to approve Mr. Winker to

21  represent Pioneer.  Even himself, he didn't do.

22          But these are the facts here.  I got them.  I got the

23  document from Mr. -- Mr. Lindsay -- Lindy (phonetic).  I signed

24  it, and I did distribute it to everybody who would be able to

25  see that I am acting appropriately and with very good faith to

1   all of the requests that are being asked of me.  Shows the date

2   I sent it to Ms. Molina.  I sent it to Mr. Winker because

3   Mr. Frank is nowhere to be found.

4            There is an email, very important email I've got that

5   I sent -- and -- and Your Honor, there's a lot of -- I'm not

6   going to go through everything.  There's a lot of text messages

7   going back and forth with his people, his law firm.

8            THE COURT:  "His" meaning?

9            MR. MENDEZ:  Mr. Frank's law firm.

10           THE COURT:  Mr. Frank.  Okay.  Remember, you've got

11  Mr. Winker; he's a "he".  Mr. Frank is a "he", so.

12           MR. MENDEZ:  Mr. -- Mr. Frank and his office

13  personnel showing my concern about the facts that Your Honor

14  had already requested and told me several times, Mr. Mendez, if

15  you don't do what you're supposed to do, there's going to be

16  consequences.  I kept telling him, listen, we're all -- where's

17  all these things?  Okay?

18           "Dear Mr. Frank and Mr. Lindy, Mr. Chris Utrera

19  continues to file charging liens even after we told him" -- and

20  Mr. Samole -- Utrera continued to file charging liens and all

21  sorts of documents.  He didn't withdraw until just, like,

22  recently, and now he's got motions to withdraw.  But that

23  created an impact because Mr. Utrera --

24           THE COURT:  Who "he" -- who "he" now?

25           MR. MENDEZ:  Mr. Utrera is Haber Law.

```
 1              THE COURT:  No, no, no.  I understand that.  But you
 2   said -- you started -- you said --
 3              MR. MENDEZ:  Mr. Utrera has created a lot of a ill
 4   will about -- around everybody here because he still holds all
 5   the documents that I'm supposed to retrieve, which Mr. Frank
 6   knows, and -- and --
 7              THE COURT:  Well, I'm going to have a chat with
 8   Mr. Utrera separately, but --
 9              MR. MENDEZ:  Yeah.
10              THE COURT:  -- let's focus on this for now.
11              MR. MENDEZ:  And I haven't -- I don't have them.  So
12   to say we're going to get you out of here because you didn't
13   provide documents, I don't have the documents.  Even Ms. --
14   Ms. -- the documents that they wish to get, they subpoenaed all
15   my bank records.  They have them.  They have all my bank
16   records, personal and not personal.  So whatever documents I
17   could provide, Haber has a lot of them.  The rest, even Ms. --
18   Ms. Molina said to them, just subpoena the documents.  No big
19   deal.  No problem.
20              So to say that I wasn't cooperative?  Mr. Frank says
21   I didn't give him my records.  He couldn't do, like I said, tax
22   records with tax -- taxes without my -- all my documents.  They
23   have them, and I have documentation that shows that I forwarded
24   to them.  Okay?  Emails.
25              Mr. Frank was never really involved in the case.  He
```

```
1    had somebody else reviewing it.  He had somebody else -- and
2    that somebody else, I do still trust.  I still do trust because
3    it's Mr. Frank who's got the incredible attitude.  You can't
4    ask him a question because he responds in a very bad, nasty
5    way.  And he stands here in the court saying that he confers
6    with counsel when he didn't even sit down with me to let me
7    know what is it that they're asking for.  What are the
8    pleadings?  I've not -- had no information.  Nothing.
9           The new plan was -- was -- was discussed.  I said
10   about the new plan that Aleida had recommended.  And I told
11   him, let's -- absolutely, let's provide it.  It's in this email
12   on March 4th, before he recused.
13          The fact is, in my opinion and -- my opinion, that he
14   received it, this email, he never responded to anything, and he
15   said, nah, forget it.  We haven't done none of this.  We
16   haven't, you know, complied with, you know, the Court's and
17   Mr. Mendez's request.  I'm not going to answer his email.  I'm
18   just going to go ahead and recuse myself from the case.  I
19   don't want to deal with this.  I don't want to deal with this.
20          Furthermore, I have also acted immediately and I have
21   set up a meeting with a new law firm.  It's here.  It's here.
22   And I have a Zoom meeting with them tomorrow, set -- scheduled
23   for 11 a.m.
24          THE COURT:  Are they a bankruptcy law firm?
25          MR. MENDEZ:  Yes, bankruptcy law firm, and I can
```

```
1   offer you their -- their name.  It's here in these documents.
2   [Kee-ums].  Kiems [sic].  His name is Tarek K --
3               THE COURT:  Mr. [Kai-um].  I know who it is.
4               MR. MENDEZ:  Kiem, yes.  I'm sorry.  He's -- I have
5   a -- a scheduled appointment with him tomorrow at -- at 11 on
6   Zoom, and only because I find out that Mr. Frank is withdrawing
7   in a -- in a unexpected -- very unexpected manner.
8               I also touch bases on Shutts & Bowen having
9   represented me, and I feel that's a complete conflict of
10  interest, and Mr. Frank should've brought that up.
11              THE COURT:  When did Shutts & Bowen represent you?
12              MR. MENDEZ:  I -- it's been years.  It's been -- I
13  have the document here, Your Honor.  I don't want to make a
14  statement of a date --
15              THE COURT:  Is it a year?  Is it --
16              MR. MENDEZ:  No, no.
17              THE COURT:  -- ten years?
18              MR. MENDEZ:  Ten years.  Ten years.
19              THE COURT:  Okay.
20              MR. MENDEZ:  Ten years.
21              THE COURT:  So it's a long, long time ago.
22              MR. MENDEZ:  A long time ago, and they did represent
23  me personally and corporately, and some of the other partners
24  in the firm represented me, as well.
25              THE COURT:  Okay.
```

```
1              MR. MENDEZ:  Yeah.

2              THE COURT:  And when was the building -- the

3    construction projects that are the subject of the creditors'

4    claims, when were they done?

5              MR. MENDEZ:  19 -- oh, I mean -- I'm sorry -- 2020, I

6    would say.  2020, '21.

7              THE COURT:  Okay, so within the last four years?

8              MR. MENDEZ:  The last four or five years, yes, Your

9    Honor.

10             THE COURT:  Okay.

11             MR. MENDEZ:  Okay.

12             THE COURT:  I'm sure Mr. Winker can walk you through

13   that.  Okay.

14             MR. MENDEZ:  These are all documented emails and fax,

15   not Mr. Frank standing here and saying "I didn't get

16   documents".  They have them.  You can call Mr. Lindy right now,

17   if the Court wishes --

18             THE COURT:  Who?

19             MR. MENDEZ:  -- to put him in the spot and say did --

20   did Mr. Mendez provide you with all the tax -- his 2019 tax

21   returns, 2020 bank records for personal and corporate, the

22   2020, 2021, 2022 records for his credit cards?  Everything that

23   would be required to do the taxes were provided.  And if

24   somebody would've checked those taxes, and there was any sort

25   of questions, I could've been asked.  Frank, what is this?
```

```
 1   What is this?  What's the other?  Not one question.  Not one
 2   email saying -- so for him to say I'm in agreement with --
 3           THE COURT:  "Him" meaning Mr. Frank?
 4           MR. MENDEZ:  Mr. Frank saying I'm in agreement with
 5   the creditors and not even reviewed what the creditors have
 6   submitted, I have been trampled over, completely trampled over
 7   by Mr. Frank's representation and others' representations which
 8   I'm not going to get into because it has nothing to do with
 9   these bankruptcy proceedings, other than Mr. Haber Law [sic]
10   having filed things that put me in jeopardy by doing what he
11   did.  And not -- I mean, he kept playing us and playing us and
12   playing us.
13           THE COURT:  Who -- who is he?
14           MR. MENDEZ:  Mr. Utrera from Haber Law.
15           THE COURT:  Okay.
16           MR. MENDEZ:  He continued to play us.  We continued
17   to go to hearings.  Mr. Winker went to hearings regarding this
18   matter.  Even after Mr. Utrera was told this is illegal; what
19   you're doing is wrong, he didn't recuse.  He kept going to the
20   hearings.  He kept wanting to have his liens in place.
21           And again, now is when I sign an agreement, okay,
22   because I had it mailed and I had to do it quickly and -- and
23   to show the Court good faith, and Mr. Frank's saying I
24   didn't -- I had no knowledge of it.  What do you mean?  You
25   sent it to me on the 6th.
```

```
1              THE COURT:  Okay.  I think what Mr. Frank says is he
2    didn't know that you signed it.
3              MR. MENDEZ:  Yes, I did sign it.
4              THE COURT:  I -- no, no, I understand.  I understand.
5    But I'm just trying to correct what I heard Mr. Frank say.
6              MR. MENDEZ:  Okay.
7              THE COURT:  Mr. Frank said he didn't know that you
8    had signed it.
9              MR. MENDEZ:  Mr. Frank also said that he had called
10   me in two weeks and sent messages, and I'm asking the Court to
11   get his doc -- his records because I have documentation here
12   that I'm in communication with his firm, even after the 5th
13   when he filed.
14             Apparently, Mr. Frank doesn't know what's going on
15   and he should take care of his -- you know, his clients,
16   because when I went to his firm, I interviewed with his
17   employee.  Very nice guy, good salesman, good person.  And I
18   believe him.  I trust in him.  Mr. Frank wasn't there.
19   Mr. Frank was in a trip.  He was supposed to do a Zoom meeting
20   with me.  Never did the Zoom meeting.
21             And when he came back and I tried to ask him
22   questions, nowhere to be found.  No emails, no texts, no calls.
23   And I want the Court to ask him for -- what he just said, okay,
24   as an officer of the court under oath, he made certain
25   statement.  And I want him to stand up to those statements.
```

```
 1                 THE COURT:  Okay, thank you.

 2                 MR. MENDEZ:  All right.

 3                 THE COURT:  Thank you, Mr. Mendez.

 4                 MR. MENDEZ:  Your Honor, these documents are here.

 5    If you wish, I can --

 6                 THE COURT:  I'm going to ask you to hold on to them.

 7                 MR. MENDEZ:  Okay.

 8                 THE COURT:  Okay?

 9                 MR. MENDEZ:  Thank you, Your Honor.

10                 THE COURT:  Hold on to them for now.

11                 MR. MENDEZ:  Thank you.

12                 THE COURT:  Thank you, Mr. Mendez.

13                 All right, Mr. Frank, anything you wish to say in

14    response before I rule on the motion to withdraw?  I don't

15    think I've ruled on it yet.  I think I've lost track, but --

16                 MR. FRANK:  Michael Frank on behalf of the debtor,

17    Judge.  Just a couple points.  How would Mr. Mendez have known

18    that Shutts & Bowen filed the motion if he didn't get the

19    motion?  That's number one.

20                 If you read the motion to dismiss or to convert,

21    there's no documents provided for the deposition.  The

22    creditors, through Mr. Samole, had to subpoena American

23    Express, subpoena the bank statements.  That's how they found

24    out all of the information that's put in the motion to dismiss.

25                 What I said in my response was it was well founded
```

1  because these things, these documents were not provided until

2  they were subpoenaed.

3             THE COURT:  Okay.

4             MR. FRANK:  So I don't know what Mr. Mendez is

5  talking about, but it's not correct.

6             THE COURT:  Okay.  Thank you.

7             All right, I'm going to grant the motion to withdraw.

8  There's no question that this relationship cannot continue.

9  And Mr. Frank's obligations to cooperate with any trustee, if

10  the case is ultimately converted, is ongoing, regardless of

11  whether he's been granted the motion to withdraw.

12             So what I'm going to do is I'm going to give the

13  debtor until next Friday to get new counsel.  That's March

14  18th, right?  March -- no.  March -- yeah.  March -- no.

15  Sorry, I'm -- I'm --

16             MR. FRANK:  Judge, would you like me to put --

17             THE COURT:  No, just wait a minute.  I'm going to

18  give the debtor until March 20th to get new counsel and file a

19  notice of appearance.  What I would like to do is I'd like --

20  and until that time, any notices will be sent to Mr. Mendez at

21  an address that we will get and to the Subchapter V trustee so

22  that there's somebody monitoring the communications.  Okay?

23             MR. FRANK:  Would you like me to put in another

24  paragraph in that order for withdraw that says I'm still

25  obligated to communicate and help the Chapter 7 trustee, when

1 and if it gets appointed?

2          THE COURT:  You can put on the -- you've stated on

3 the record that you acknowledge that you are obligated to do

4 so.

5          MR. FRANK:  Okay.

6          THE COURT:  Okay?  So what I want to do is I would

7 like to continue this hearing until Friday, March 29th, in the

8 afternoon, and I need to ask all counsel if they're available.

9          So we'll start with you, Mr. Alexander.

10         MR. ALEXANDER:  Your Honor, before you continue, may

11 I briefly make a statement?  I know you heard a lot.

12         THE COURT:  Absolutely.

13         MR. ALEXANDER:  Okay.

14         THE COURT:  The only reason I'm saying that is the

15 following:  I'm not going to -- and that's why I'm not going to

16 look at Mr. Mendez's documents today.  Well, let me say this,

17 Mr. Alexander, and then we'll go back.  Okay?  We'll -- let me

18 just finish this.  I mean, you're welcome to stand up there.

19         So one, Mr. Mendez, I hear what you're saying, and

20 what you're saying is relevant on two different levels.  One,

21 it's relevant insofar as that will be what the debtor puts on

22 in response to the allegations of your motion, Mr. Alexander.

23 In other words, that the debtor was cooperating, was providing

24 the dates, and that there was a stop at Mr. Frank's office.

25 I'm not saying that's true.  I'm saying that's what I'm hearing

1   Mr. Mendez saying is going to be part of the response.

2           The other part of it, Mr. Mendez, regarding how you

3   feel you were represented by Mr. Frank's law firm in connection

4   with the bankruptcy case is something between you and

5   Mr. Frank, and that is only relevant to this Court insofar as

6   any such time as either Mr. Frank files a fee application or

7   either the debtor or trustee, if I do convert the case, files a

8   motion to disgorge all or part of Mr. Frank's fee.  Okay?

9           So I just want you to understand, Mr. Mendez.  It --

10  there's two parallel things happening here.  One relates

11  directly to the motion before me.  The other is -- only relates

12  to what I've just described.  Okay.

13          So Mr. Alexander, it is clear to me that Mr. Frank

14  cannot represent the debtor today, and I am concerned about the

15  debtor going forward today unrepresented because it is an

16  entity.  So say whatever it is that you have to say, and I'm

17  listening.

18          MR. ALEXANDER:  Thank you, Your Honor.  Set for today

19  were multiple matters, and one of them being the confirmation

20  hearing.

21          THE COURT:  Right.

22          MR. ALEXANDER:  Your Honor's confirmation order has

23  specific language within the order which set deadlines and also

24  indicated what sanctions may be and may occur if those were not

25  complied with.

```
 1              THE COURT:  Mm-hmm.

 2              MR. ALEXANDER:  So putting aside the motion to

 3   convert, Your Honor has an order that has not been complied

 4   with.  Those are deadlines that should've been complied with

 5   before Mr. Frank filed his motion to withdraw, and so we

 6   believe that, based on the order itself, Your Honor can convert

 7   the case for failure to comply with the order setting hearing

 8   on confirmation.

 9              And our concern with pushing things out to the 29th

10   is we've seen bank records, and we believe that funds are being

11   misappropriated based on the records that we saw.  There's

12   hundreds of thousands of dollars that are currently in the DIP

13   account.  There have been checks that have been made out to

14   parties that we don't believe should be receiving those.

15              THE COURT:  Mm-hmm.

16              MR. ALEXANDER:  And also, it's just not being

17   accounted for with the Court.  And so --

18              THE COURT:  I understand.  And I --

19              MR. ALEXANDER:  -- to have this kicked out for

20   another several weeks without any restrictions on how funds can

21   be used and applied, we believe is a disservice and is

22   prejudicial to the estate.  And so --

23              THE COURT:  Mm-hmm.

24              MR. ALEXANDER:  -- to the extent that Your Honor

25   continues the hearing, we would like an order indicating that
```

1  the debtor's not allowed to use any funds within the debtor-in-

2  possession account without Bankruptcy Court approval.  We need

3  a freeze on those funds, and it's our understanding that there

4  is no work being performed right now, and so we don't believe

5  that there would be any prejudice to the debtor if something

6  like that were to occur.  But without that occurring, our fear

7  is that these funds are not going to be there when Your Honor

8  comes back.  And no orders have been complied with.  We don't

9  think that's going to change.  And this has been going on in

10 terms of the debtor with respect to replacing counsel and

11 delay.

12          THE COURT:  Mm-hmm.

13          MR. ALEXANDER:  And so we view this as another tactic

14 to delay things out even further with respect to what we see as

15 the ultimate conversion of this case, because this debtor

16 should not be in a Chapter 11.

17          THE COURT:  Okay.  I think those are fair comments,

18 Mr. Alexander.  Let me make the following observation.

19          It is clear from the record that at least part of the

20 problem with respect to the failure to be prepared for today

21 does lie with Mr. Frank.  It is not the debtor's fault that

22 Mr. Frank did not send out ballots and solicit votes for this

23 plan.  Okay?  That's not -- that's not the debtor's fault.

24          I have concerns raised by the comments of Mr. Mendez,

25 without making any findings now whether they're accurate or

```
1   not, that the debtor's failure to be prepared for today should
2   be -- lie with debtor's counsel and not with the principal of
3   the debtor.  I don't know that today.  You understand what I'm
4   saying?
5           MR. ALEXANDER:  No, I understand that, Your Honor.
6           THE COURT:  So I am -- I'm reluctant -- I have
7   been -- I have freely applied that particular provision of my
8   confirmation order setting confirmation in the past.  But in
9   this particular case, it is not clear to me whether that is the
10  fault of the principal of the debtor or the fault of the
11  debtor's now former attorney.
12          MR. ALEXANDER:  In our view, it doesn't matter, Your
13  Honor, because they're an agent of the debtor.
14          THE COURT:  I --
15          MR. ALEXANDER:  So it is the debtor --
16          THE COURT:  I hear you.
17          MR. ALEXANDER:  -- and that's what it ultimately
18  falls upon is the debtor.
19          THE COURT:  I acknowledge your argument.  However,
20  having said that, your pleadings have raised great concerns to
21  me, and I was very concerned about continuing today's hearing,
22  especially because I have a six-day trial starting tomorrow.
23  Okay?  So that makes me unavailable to deal with this.
24          And so I know that I have time on the afternoon of
25  Friday, March 29th.  I do know that that is Good Friday, and
```

1    I'm very respectful of people's religious holidays.  But that's

2    the first time that I have an opening where we can do this.

3    And that is a hearing, Mr. Mendez, that I will not continue.

4    So whether it's Mr. Kiem or it's another lawyer -- not

5    Mr. Winker, but another bankruptcy lawyer -- that is a hearing

6    that will take place, if you are available, Mr. Alexander.

7              MR. ALEXANDER:  I am available on the 29th.  And what

8    will be heard on the 29th?

9              THE COURT:  The motion to convert or dismiss.

10             MR. ALEXANDER:  How about the confirmation?  Because

11   that should also be set for that date, as well.

12             THE COURT:  I heard Mr. Mendez say, on behalf of the

13   debtor, that the debtor had intended to amend the plan.

14             MR. ALEXANDER:  And if they amend the plan, that can

15   get continued.  But if it's not amended, and if it isn't

16   amended and it still has the same issues, we don't believe that

17   that should get kicked out because that's another basis for

18   conversion of the case is the inability to propose a plan.

19   Because what they filed was just a skeletal plan that didn't

20   even satisfy the Subchapter V requirements which are very

21   minimal.  So we have great concern that we can't keep kicking

22   that out.  I mean, the goal of a Subchapter V is for a quick,

23   expeditious, and inexpensive way to get through Chapter 11, and

24   what we have now is more akin to a typical Chapter 11 case

25   which is burdening the estate with additional funds and also

1  burdening the creditors.  So --

2          THE COURT:  I understand.

3          MR. ALEXANDER:  -- we would request that it all be

4  together or Your Honor consider that as part of the motion to

5  convert.

6          THE COURT:  Okay.

7          All right, what I'm inclined to do is the following:

8  is to continue the hearing to March 29th at 1 o'clock.  That

9  will be the hearing on the motion to convert or dismiss.  That

10 if the debtor fails to file an amended plan which at least

11 facially complies with the requirements for confirmation in

12 more than a superficial way in advance of the hearing, then

13 that will be taken into account.  But I'm not setting anything

14 for confirmation on the 29th.

15         With respect to -- and so with respect to the funds

16 in the DIP account, I'm going to enter an order that no funds

17 can be disbursed from the DIP account without the prior

18 approval of the Subchapter V trustee or a motion filed with

19 this Court asking authority to disburse the funds.  If the

20 debtor disburses any funds from that account without the prior

21 written approval -- written approval -- of the Subchapter V

22 trustee, I will immediately convert the case.  No hearing.

23 Okay?

24         So Mr. Mendez, if you have any expenses coming up,

25 you need to list them, you need to run them by

1  Ms. Martinez-Molina and get Ms. Martinez-Molina's approval.
2  Otherwise, it needs to be brought before me.  That hearing will
3  have to be conducted during whatever lunchtime I get during the
4  next six days because I will be in trial.

5       So no money out of the DIP account, starting
6  immediately, without Ms. Martinez-Molina's approval or the case
7  will be immediately converted.

8       Right.  So that is what I'm inclined to do.  And
9  that's what I think I am going to do.

10      So let me hear from Ms. Martinez-Molina.  Mr. Mendez
11 had his hand up, so I figure he has a question.  And I'll hear
12 from Mr. Gold, and then finally from Mr. Alexander.

13      So Ms. Martinez-Molina, I obviously don't want to put
14 a total prescription on the debtor's ability to use money.  I
15 also don't want to not have controls in place.  And so it seems
16 to me that the only way to do so is to have you be the person
17 who looks at any requests before -- before, Mr. Mendez, a penny
18 goes out of the account.  Okay?  I just don't know how to do it
19 otherwise.

20      So let me have your thoughts, other than here you go
21 doing it to me again, Judge.

22      MS. MARTINEZ-MOLINA:  Thank you, Your Honor.  Aleida
23 Martinez as Subchapter V trustee.  So I assume that the Court
24 would approve normal operating expenses, whatever normal
25 appropriate operating expenses those --

1          THE COURT:  Well, that would be, you know, like, if
2  there's rent being paid, rent.  If there is employee taxes that
3  have to be paid, employee taxes.  And I -- my recollection is
4  that the debtor did not have a business property.  The rent for
5  Mr. Mendez's personal home is not the rent that can be paid by
6  the debtor.
7          MS. MARTINEZ-MOLINA:  And to be clear, my
8  understanding is that the business office is actually a -- a
9  residential property in Pinecrest, and that's what has been --
10  rent has been paid with respect to the debtor.
11          THE COURT:  Okay, so you've gone into this home in
12  Pinecrest and you have confirmed that there is nothing going on
13  but a business operation which, of course, is a violation of
14  Pinecrest permitting laws?
15          MS. MARTINEZ-MOLINA:  No, I have not.
16          THE COURT:  Okay.  Then I'm not going to allow it.
17  Okay?  If -- but in terms of if there's other overhead, you
18  know, whatever normal -- I understand there's an issue
19  regarding Mr. Mendez taking extra money besides his salary.
20  His salary's acceptable.  No other money can come out.
21          And any other -- any other payments that are
22  unrelated to the business cannot be paid without court order,
23  and that'll have to be argued to me, as I said, during
24  lunchtime.
25          MS. MARTINEZ-MOLINA:  I do have a question, Your

1    Honor.  It seems like the next big-ticket item would be a

2    retainer for new debtor's counsel.  How would the Court view a

3    retainer for new debtor counsel?

4            THE COURT:  Well, since it's post-petition, there'd

5    have to be a motion filed with the Court.  I would hear the

6    motion on an expedited basis.  If Mr. Kiem is counsel, then he

7    can certainly file that motion.  Again, the hearing would have

8    to be during lunchtime when I take a lunch break from the trial

9    because that's the only time I'm going to have because the

10   trial starts at 9 every day and gets done at 5:30 every day.

11   So I will not have time other than lunchtime.

12           MS. MARTINEZ-MOLINA:  Understood.

13           THE COURT:  All right?  But that can't -- but that

14   can't be done without court order anyway, to pay a retainer.

15   So -- but I will hear that motion on an expedited basis if

16   that's necessary.

17           MS. MARTINEZ-MOLINA:  Thank you, Your Honor.

18           THE COURT:  All right, thank you.

19           Okay, Mr. Mendez, did you have any questions?

20           MR. MENDEZ:  Yes, Your Honor.  Thank you for

21   listening.

22           The -- the rent that's being paid is for -- and I

23   would kindly like you and yourself or anybody to drive by and

24   take a look inside as to the property that we're -- we're

25   saying that we have our offices there.  And the Village of

1   Pinecrest allows for offices --

2           THE COURT:  It allows you to have --

3           MR. MENDEZ:  -- inside residential areas.

4           THE COURT:  I have an office in my house.

5           MR. MENDEZ:  And home offices.

6           THE COURT:  But your -- but it's not -- unless

7   there's nothing done -- being done there but it being operated

8   as an office, which is in violation of the Pinecrest

9   regulations, okay -- that I know for a fact, okay? -- then we

10  are not paying rent on a home in Pinecrest.

11          MR. MENDEZ:  Your --

12          THE COURT:  That ain't happening.

13          MR. MENDEZ:  Your Honor, if Ms. Aleida drive by and

14  sees what we're doing, the Pinecrest ordinance allows you to

15  have residential offices, as all the parties sitting here, you

16  know, the creditors have their own offices in their -- in their

17  homes.

18          THE COURT:  I -- Mr. Mendez, look.  I --

19          MR. MENDEZ:  As long as you don't have -- as long as

20  you don't have an ongoing recycling of cars coming in and out,

21  which we don't -- we don't -- we are only operating our

22  computers, our filing systems, all the records that we've been,

23  you know, reviewing, the garage, we have storage in there,

24  which is -- nothing is in violation of the Village of Pinecrest

25  records.

```
 1            THE COURT:  Okay.  Mr. Mendez, the answer is no.
 2   When you retain bankruptcy counsel --
 3            MR. MENDEZ:  Okay.
 4            THE COURT:  -- your counsel can file a motion --
 5            MR. MENDEZ:  Okay.
 6            THE COURT:  -- with photos, affidavits --
 7            MR. MENDEZ:  Okay.
 8            THE COURT:  -- that include that no one is residing
 9   in the property --
10            MR. MENDEZ:  Okay.
11            THE COURT:  -- that it is legal, and that will have
12   to require something from the building inspector or whoever it
13   is --
14            MR. MENDEZ:  Okay.
15            THE COURT:  -- at the Village of Pinecrest.  But
16   until then, the answer's no.
17            MR. MENDEZ:  All right.
18            THE COURT:  But again, since you have to get a lawyer
19   by the 20th, that lawyer will have plenty of time, and it's
20   only -- maybe the rent won't even be due.  But if it's due,
21   then you're going to have to work it out some other way --
22            MR. MENDEZ:  All right.
23            THE COURT:  -- because I will not authorize it as of
24   right now.
25            MR. MENDEZ:  Okay.  The other concern I have is that
```

1  I have recurring withdrawals from the account, certain things

2  like I would say the salaries, and you know, some of the, let's

3  say, the computer-required items that we use in order to

4  operate, to work, internet, because if you don't have the

5  internet, you can't operate the computers.  And I don't want to

6  be in violation of anything just because all of a sudden, one

7  of these items that has been set up already in order to go

8  through the -- through the -- through the account is taken out.

9       And I -- and again, there's statements being made

10  without me having even reviewed or proven that I'm taking any

11  money out of those accounts that are not regarded -- or in

12  regards to business operations.

13       In fact, he -- the gentleman -- the attorney said

14  that I have nothing going on.  There's no business going on and

15  Pioneer's not operating with anything that's going on.  I

16  continue to deposit, which I have a check in my car to deposit

17  in that account.  I have continued to deposit.  Last month I

18  think I deposited like $51,000 in that account.  And I do have

19  ongoing work.

20       THE COURT:  Okay, great.

21       MR. MENDEZ:  So for the statement that I have no

22  ongoing work --

23       THE COURT:  Mr. Mendez, Mr. Mendez, listen to me.

24  It's not even ten days.  Okay?

25       MR. MENDEZ:  No problem.

1          THE COURT:  There shouldn't be auto-withdrawals

2    coming out of that account anyway because that's not a how a

3    DIP account should work.

4          MR. MENDEZ:  Okay.

5          THE COURT:  Okay?  But you go sit down with

6    Ms. Martinez-Molina.

7          MR. MENDEZ:  Okay.

8          THE COURT:  You go over what you believe are

9    legitimate business costs.  Ms. Martinez-Molina will either

10   agree and say it's okay -- and again, it's only what has to

11   come out over the next ten days, because then you have a

12   lawyer --

13          MR. MENDEZ:  Right.

14          THE COURT:  -- and Ms. Martinez-Molina doesn't have

15   to deal with this anymore -- well, actually, it'll be until we

16   have the hearing on the 29th.  But in any event, you'll have a

17   lawyer, so your lawyer can tee up whatever motions he or she --

18   I mean, if you hire Mr. Kiem, obviously it'll be a he, but he

19   or she has to tee up regarding any authorization.  If

20   Ms. Martinez-Molina does not agree that it is a legitimate

21   business expense,then you have to file a motion, and I will

22   decide if it's a legitimate business expense.

23          MR. MENDEZ:  I'll make it easy.  I -- I believe

24   that --

25          THE COURT:  If it's to your ex-fiancée or your ex-

1   wife or something like that, that is not a legitimate business

2   expense unless you --

3          MR. MENDEZ:  I have not done any checks to any of

4   those people.

5          THE COURT:  I'm not saying you have.  I'm not saying

6   you have.

7          MR. MENDEZ:  Okay.

8          THE COURT:  I'm just addressing the allegations of

9   the motion.  That's all I'm saying.

10         MR. MENDEZ:  Okay.

11         THE COURT:  Okay?  So can't be any clearer.

12         MR. MENDEZ:  I got it.

13         THE COURT:  Either Ms. Martinez-Molina okays it or

14   you file a motion asking for authority to pay the expense.

15         MR. MENDEZ:  Okay.

16         THE COURT:  Okay?

17         MR. MENDEZ:  Thank you.  Yes.

18         THE COURT:  All right.  Great.  And that goes through

19   the end of the 29th.

20         MR. MENDEZ:  All right.

21         THE COURT:  As I said, if any money goes out of that

22   account without one of those two happening, I convert the case

23   right away.

24         MR. MENDEZ:  Okay, thank you.

25         THE COURT:  Okay?  With respect to the lawyer, you

1  have until the 20th -- the debtor has until the 20th.

2  Mr. Frank, you put that in the order.

3           And then Mr. Alexander, you'll prepare an order

4  continuing the hearing on your motion until the 29th at 1 p.m.

5           MR. ALEXANDER:  Vincent Alexander.  Yes, Your Honor.

6  I'll prepare that.  Will it still be scheduled as

7  nonevidentiary?  Or --

8           THE COURT:  It will be evidentiary.

9           MR. ALEXANDER:  It will be evidentiary.

10          THE COURT:  This was scheduled as nonevidentiary?

11          MR. ALEXANDER:  That's what the notice issued by Your

12  Honor had.

13          THE COURT:  Well, it'll be evidentiary because I

14  can't convert the case without evidence.  Now --

15          MR. ALEXANDER:  Well, you can if it's not disputed by

16  the other side.  And did we --

17          THE COURT:  It -- well, you have to still make the

18  proffer, but right.

19          MR. ALEXANDER:  Correct.

20          THE COURT:  Exactly.  But -- and a lot of what you've

21  cited is in the record already, so those things are done.  And

22  presumably, as soon as the debtor has counsel, you can reach

23  out to counsel, and the facts that are not in dispute, those

24  can be, you know, announced at the beginning of the hearing, or

25  you can file a written pre-hearing stipulation that says these

1   are the facts that are not disputed, so that will save time.

2           And in the meantime, I'm assuming, Mr. Mendez, if

3   your defense is what you've outlined for me when you made your

4   personal statement to the Court previously, you'll share that

5   with your lawyer, and the lawyer will put on that defense.

6           And that's the best that I can do, Mr. Alexander.

7           MR. ALEXANDER:  Understood, Your Honor.  In terms of

8   the 20th, failure to comply and have a motion to employ on

9   file, what are the consequences of that?

10          THE COURT:  Then I'll consider conversion because

11  there's no attorney in place.

12          MR. ALEXANDER:  At what time?  Prior to the 29th?

13  Or --

14          THE COURT:  Well, it can be, but yeah.

15          MR. ALEXANDER:  Okay.

16          THE COURT:  But I might as well just wait until the

17  29th because I will be out -- and if something's filed between

18  the 22nd and the 28th, then another judge will have to hear it.

19  So it may just make sense to wait until the 29th.

20          MR. ALEXANDER:  Okay, and just two last points, Your

21  Honor.

22          THE COURT:  But what is not going to happen is -- the

23  reason I said the 20th, Mr. Mendez, and for Mr. Winker's

24  benefit, too, since you said, Mr. Winker, you represent

25  Mr. Mendez personally and the company as general counsel -- is

1  we're not going to have a hearing on the 29th where the debtor

2  says that we just got a lawyer and so we can't go forward.

3  That's not going to happen.  And that's why I'm saying it has

4  to be by the 20th, so that that lawyer has time to prepare,

5  whoever that lawyer is -- bankruptcy lawyer.

6           MR. ALEXANDER:  And Mr. Mendez referenced additional

7  funds coming in.  I -- we just want to make it clear, to the

8  extent there are other funds -- we haven't seen any contracts

9  that there should be funds, but to the extent there are, those

10  need to still go into the DIP account.

11           THE COURT:  And I didn't hear Mr. Mendez say anything

12  to the contrary.

13           MR. ALEXANDER:  Understood.  And with respect to

14  Shutts, I confirmed.  There was a representation of Inter-

15  Development, Inc. in 2010.  So we don't believe there's any

16  type of conflict.  To the extent that comes up, we'll address

17  it.

18           THE COURT:  Okay, and I don't disagree, which is why

19  I asked Mr. Mendez those questions.  So Mr. Winker, you'll go

20  over the bar rules.  Doesn't seem to me we have a problem.  If

21  there is, then counsel can file the appropriate motion.  But it

22  doesn't sound like it to me.  I actually had to deal with this

23  issue in another case and spent a great deal of time having to

24  work my way through issues regarding prior counsel, so that's

25  an area with which I have a good familiarity.

1          Okay.  So the motion -- the confirmation hearing is

2    off.  If the debtor doesn't file an amended plan that at least

3    appears on its face to be a good-faith, you know, Subchapter V

4    plan, that's an issue that you can raise and -- as part of your

5    proof, Mr. Alexander, in your presentation.

6          On the motion to extend time to file proof of claim,

7    Mr. Utrera, I'm going to continue that, but I just want to say

8    this for the record.  Since the debtor has signed a stipulation

9    that will cause the motion for contempt to withdraw, I just

10   want to make this very clear.  I don't know what you were

11   thinking when you continued to act against the debtor after a

12   bankruptcy case was filed.  I can guarantee you that Mr. Haber

13   knows better because Mr. Haber at least used to practice in

14   bankruptcy court.  But I will tell you that but for the fact

15   that the debtor had signed the agreement, that I would be all

16   over you.  So if I -- we don't need to get into it, but I'm

17   just saying if it is true that you continued to act after you

18   knew that a bankruptcy case had been filed, then you are a very

19   lucky man right now.

20          MR. UTRERA:  I appreciate that, Your Honor.  There

21   are separate issues, but like you said, I don't think there's a

22   need to get into them right now considering what we've talked

23   about.

24          THE COURT:  Okay.  All right.

25          All right, so the motion to file the proof of claim

1    is extended.  I'm going to actually extend it after the 29th,

2    Mr. Utrera, okay, because if the case is converted, it becomes

3    moot because you have a chance to file a claim in a 7.

4                    MR. UTRERA:  Okay.

5                    THE COURT:  So let's just --

6                    MR. UTRERA:  Agreed.

7                    THE COURT:  We'll continue that until after the 29th.

8    Just keep that in your vest pocket and coordinate with

9    Ms. Sanabria for a date after the 29th so that we have it

10   somewhere on the calendar that'll just come off if the case is

11   converted.

12                   All right.  The motion to convert is continued.  So

13   this is continued.  That's ECF Number 80.  Motion for relief

14   from stay.  Is that mooted out by the -- what we talked about

15   today?

16                   MR. UTRERA:  All of it may be mooted out -- all of it

17   will be mooted out by the settlement agreement.

18                   THE COURT:  Okay.  And the settlement agreement

19   allows you to file the notice of charging lien?

20                   MR. UTRERA:  No.

21                   THE COURT:  Oh.

22                   MR. UTRERA:  The settlement agreement, without

23   getting too far into the weeds, basically resolves all the

24   issues.

25                   THE COURT:  Okay, so then that's resolved.  Okay.  So

1  I'm -- are you going to file a order denying it as moot or

2  withdrawing it or something.

3          MR. UTRERA:  Right.  Yeah, yes.  A notice of

4  withdrawal, Your Honor.

5          THE COURT:  Okay.  And then I'll put your name on

6  that, Mr. Utrera.  That's your -- your motion to withdraw is

7  granted, Mr. Frank.

8          MR. FRANK:  So the Court knows, part of the agreement

9  was that they would withdraw their proof of claim.  So again,

10 they'd have the opportunity down the road to file it again.

11         THE COURT:  Okay.  So that means that the motion to

12 extend time to file the proof of claim is moot.

13         MR. UTRERA:  Yeah, that's why I said everything.  All

14 of this would be moot.

15         THE COURT:  Okay, then go ahead and -- and it's

16 rather than continue ECF Number 80, Mr. Utrera, just do a

17 withdrawal of your motion and that the proof of claim will be

18 withdrawn.

19         MR. UTRERA:  Understood.

20         THE COURT:  Okay.  All right, and then

21 Ms. Martinez-Molina, did you want to go forward with your

22 application or continue that until the 29th?  You tell me.

23 It's your application.

24         MS. MARTINEZ-MOLINA:  Whatever the Court wishes, but

25 I'm -- I'd proceed.  I'm holding money, and the Court ought to

1  know that I'm holding money in trust.  And that is based upon

2  the post-petition retainer application and order.

3          THE COURT:  Okay, well, let me hear from Mr. Gold,

4  then.

5          Okay, Mr. Gold?

6          MR. GOLD:  Yes, thank you, Your Honor.  Dan Gold for

7  the U.S. Trustee.  If Ms. Martinez-Molina would prefer to have

8  the application heard on an interim basis and her fees to be

9  paid to the extent that she's holding funds in trust, she can

10 draw those down and then file a final application before the

11 29th, that would be just fine.  I think it's appropriate under

12 the circumstances.

13         I know in sub-Vs, we typically save fee applications

14 for confirmation hearings, but Ms. Martinez-Molina has been put

15 in a situation where she is doing work I think above and beyond

16 that of a typical sub-V trustee, and I would like to see her

17 get some benefit from having to do that and providing the

18 service to all parties in the case.

19         THE COURT:  Well, yeah.  And I was sort of doing a

20 hybrid because my other option was to take the debtor out of

21 possession until the debtor got counsel, and so this is sort of

22 a hybrid.

23         MR. GOLD:  Correct.  I know this is veering off of

24 the fee application topic for the moment.  I just wanted to ask

25 the Court to make it abundantly clear to all in the courtroom,

1  debtor's principal obviously had a colloquy with Your Honor,

2  and I just want there to be no ambiguity about the effective

3  time of Your Honor's order telling the debtor-in-possession or

4  directing the debtor-in-possession to confer with Martinez --

5  Ms. Martinez-Molina, establish a set of approved payments or

6  expenses that have to be made, and that the effective time for

7  that is right now, from the moment, basically, Your Honor

8  issued the order to the debtor-in-possession.  We're not

9  waiting for the entry date of an order for Your Honor's

10  directions to be effective.  So the moment that the debtor-in-

11  possession's principal and Mr. Winker and all the rest of us

12  walk out of the courtroom, that it's everybody's understanding

13  with no ambiguity that any expenses have to be approved by

14  Ms. Martinez-Molina without exception.  That's --

15            THE COURT:  Well, that -- that order went to --

16            MR. GOLD:  -- in the first instance.

17            THE COURT:  That order went into effect when those

18  words came out of my mouth.

19            MR. GOLD:  That's how I took them, Your Honor.  I

20  just want --

21            THE COURT:  Okay.

22            MR. GOLD:  -- there to be no ambiguity.

23            THE COURT:  I think Mr. Mendez understood that.

24            MR. GOLD:  Okay, great.

25            THE COURT:  Right, Mr. Mendez?

```
1              MR. MENDEZ:  Yes, Your Honor.

2              THE COURT:  Okay.

3              MR. MENDEZ:  Yes, Your Honor.

4              THE COURT:  Okay.  So Mr. Alexander, any objection to

5   Ms. Martinez-Molina taking the money that she's holding in her

6   trust account to apply towards her application?

7              MR. ALEXANDER:  We have no objection, Your Honor.

8              THE COURT:  All right.  Mr. Mendez, on behalf of the

9   debtor, since the debtor is currently unrepresented, do you

10  have an objection to Ms. Martinez-Molina drawing down on the

11  money in her trust account on an interim basis?

12             MR. MENDEZ:  Absolutely not.  As a matter of fact, I

13  feel that she -- as mentioned by counsel, she has done way

14  above what I believe should've been her responsibility.  She

15  earned every bit of that money, if not more.  Thank you, Your

16  Honor.

17             THE COURT:  All right.  Thank you, Mr. Mendez.

18             All right, Ms. Martinez-Molina, draw -- prepare an

19  order that authorizes you -- approves your fees to date and

20  authorizes you to draw down on the money in your trust account.

21  Okay?

22             MS. MARTINEZ-MOLINA:  Yes, Your Honor.  Thank you.

23  And just a point of clarification regarding -- who's preparing

24  the order regarding my reviewing the budget?

25             THE COURT:  You know what?  I'd like, Mr. Alexander,
```

1  if you didn't mind, if you'll just do, in your -- do an order

2  continuing your hearing, and in the order, say during the --

3  that the debtor has -- well, the debtor having to -- put in the

4  attorney by the 20th and that until the hearing on the 29th,

5  that if the debtor violates it, the case will be converted

6  immediately, and also that until further order of the Court,

7  the debtor may not withdraw funds from the account without

8  prior approval of either Ms. Martinez-Molina or if

9  Ms. Martinez-Molina does not approve, then by order of the

10 Court.  So put all that in the order.  Please share it with

11 Mr. Gold, Ms. Martinez-Molina, and in the absence of debtor

12 having counsel, you can send it to Mr. Winker to review if he

13 has any questions.  Okay?

14         MS. MARTINEZ-MOLINA:  Your Honor, one last thing if I

15 could -- if the Court could indulge all of us.  If the debtor's

16 representative could forward a bank statement as of today to me

17 as soon as possible of the DIP account, if that's --

18         THE COURT:  Yeah, okay.

19         MR. MENDEZ:  Absolutely.  I'll request it from the

20 bank.  Yes, ma'am.

21         THE COURT:  Okay, so Mr. Mendez has stated on the

22 record that the debtor will -- debtor's principal will send to

23 Ms. Martinez-Molina today a copy of today's bank account -- the

24 statement from today.  What is it exactly you want, so there's

25 no question.

1         MR. MENDEZ:  I will request it from the bank today

2    and give them your email directly so that you can have

3    confirmation of everything in that bank account and any --

4    anything that's been withdrawn within the last month or so.

5         THE COURT:  Okay, so just -- so just so the record is

6    clear, Mr. Mendez -- and Ms. Martinez-Molina, you can tell me

7    if you need more -- is that you will be added as a noticed

8    party for bank statements on the bank account.  Is that what I

9    heard you say, Mr. Mendez, that Ms. Martinez-Molina will

10   directly receive the bank statements from the bank, that

11   Mr. Mendez will order the current bank statement to be sent to

12   you today or as soon as -- it's already four o'clock, so

13   tomorrow, and that -- and then the statements for the last

14   month.  Is that what I'm hearing?

15        MR. MENDEZ:  Yes.  My clarification, Your Honor, was

16   that as soon as I leave here and I get access to my phone, I

17   will call the bank and ask them to immediately -- two things --

18   stop any payments that are being made, a, you know, automatic

19   pay, unless I make the payment and confirm to the bank that

20   that money's going to be processed.

21        Number two, as soon as I get the bank to act on

22   providing me the statement, I will immediately follow it to

23   Ms. Martinez.  Obviously, today it's late.  I would venture to

24   say that by tomorrow, I should have those records.

25        And I will also give Ms. Aleida Martinez -- it's

1    important moving forward what the account has been paying in

2    the last one or two months so that we can sit down and review

3    it and she can tell me, yes, Frank, no, Frank, do this, do the

4    other.  Okay?

5             THE COURT:  Okay.  All right.

6             MR. MENDEZ:  Thank you, Your Honor.

7             THE COURT:  Okay.  Mr. Alexander, does that all

8    address your concerns?

9             MR. ALEXANDER:  It was only a -- I guess, a question.

10   If there's electronic access to the bank account, then we would

11   need a print as of today.  Because otherwise, the bank

12   statement will be as of February 29th, and so there will be a

13   gap.

14            THE COURT:  No, I think Mr. Mendez said he was going

15   to try to get the statement printout from today.  Was that

16   right, Mr. Mendez?  Yeah, yeah.

17            MR. MENDEZ:  Yes, Your Honor.  I'm going to try.

18            MR. ALEXANDER:  But if there's --

19            THE COURT:   Today or tomorrow.

20            MR. ALEXANDER:  But if there's electronic access to

21   the account, then I don't see why you need the bank.  But --

22            THE COURT:  You know what?  You, Ms. Martinez-Molina,

23   and Mr. Mendez can go -- I don't -- now you're getting way

24   above my pay grade.  I just put --

25            MR. ALEXANDER:  No, I think every account you have,

```
 1   Your Honor, has an electronic access.

 2            THE COURT:  Okay, I just put -- no, no, no.  I just

 3   put the app on my phone.

 4            MR. ALEXANDER:  I hear you, though.

 5            THE COURT:  I don't know what you're talking about.

 6   Okay?  I don't know what you're talking about.

 7            MR. ALEXANDER:  Well, that's all he needs.

 8            THE COURT:  Okay.  This is what happens when you have

 9   old people on the bench.  Okay?

10            MR. ALEXANDER:  You're not old, Your Honor.

11            THE COURT:  Well, anybody over 12.  Okay.

12            Okay, I think I've covered everything.  Does anybody

13   have any questions?

14            All right.  If you submit orders -- and remember, I

15   start trial tomorrow morning at 9 a.m.  I don't get out of

16   trial until 5:30 in the afternoon.  I will be eating.  I will

17   review orders while I'm eating, but that's the best I can do.

18   So if you need something done, understand it's going to be

19   lunchtime-ish or after 5:30.  So I won't be able to deal with

20   anything in between.

21            If there's an expedited motion filed by anybody, I

22   will look at the motion, I will set it for estimated lunchtimes

23   when I can.  Okay?

24            Okay, great.  Thank you all very much.  And thank you

25   all, creditors, for coming in today.  Except Mr. Cordero.  He's
```

1  supposed to be here.

2          All right.  Thank you all very much.  Have a good

3  rest of your day.

4          MR. ALEXANDER:  Thank you, Your Honor.

5     (Proceedings concluded at 4:11 p.m.)

6                         *  *  *  *  *

7

8

9

10

11

12

13

14

15            **C E R T I F I C A T I O N**

16

17          I, Dena Farbman, court-approved transcriber, hereby

18  certify that the foregoing is a correct transcript from the

19  official electronic sound recording of the proceedings in the

20  above-entitled matter.

21

22

23  _____

24  DENA FARBMAN, AAERT NO. 629   DATE: 3/14/2024

25  ACCESS TRANSCRIPTS, LLC