**Fill in this information to identify the case:**

Debtor Name __PIONEER INTER-DEVELOPMENT, INC.,__

United States Bankruptcy Court for the: __Southern__ _____ District of __Florida__
                                                                              (State)

Case number: __23-18321-LMI__

☒ Check if this is an amended filing

## Official Form 425A

## Second Amended Plan of Reorganization  Chapter 11("Plan")

**PIONEER INTER-DEVELOPMENT, INC.**                    **Plan of Reorganization, Dated   April 23,2024**

[If this plan is for a small business debtor under Subchapter V, 11 U.S.C. § 1190 requires that it include "(A) a brief history of the business operations of the debtor; (B) a liquidation analysis; and (C) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization." The Background section below may be used for that purpose. Otherwise, the Background section can be deleted from the form, and the Plan can start with "Article 1: Summary"]

### Background for Cases Filed Under Subchapter V

A. Description and History of the Debtor's Business

The Debtor, PIONEER INTER-DEVELOPMENT, INC. is a company which provides General Contractor Services and Construction Management Services in Miami, Florida, primarily in the Village of Pinecrest. The Debtor is owned and operated by Francisco Mendez and he has been the owner /operator since the debtor was formed in 1992. The Debtor was operating profitably and has no secured creditors, which is rare for a Chapter 11 debtor. However, on or about October 2,2023 a creditor, Trevor Taylor, obtained a $1,991,020.16 arbitration award against the Debtor. In order to stave off collection efforts and maintain ongoing operations for the benefit of all creditors and the estate the Debtor filed for Chapter 11 relief on October 12, 2024.

On the Petition Date, October 12, 2023, the Debtor had $309,908.67 in its bank account at City National Bank. The Debtor, after paying Gamberg & Abrams $65,000 retainer on March 19, 2024, currently has $ 213,057 in the DIP account.

The Debtor had gross revenue of approximately $740,000 in 2022 and approximately $609,000 in 2023. The primary projects for these 2 years were Jean Segura and Deborah Taylor homes.

The Debtor currently has a substantial project in process for Deborah Taylor which will bring approximately $452,000 in gross revenue to the estate over the next 9 months and expects to enter into a contract with a customer, Mr. Smith, which is expected to commence on or about September 1st 2024 which will bring an additional $102,600 to the estate.

The Debtor has a strong likelihood of an additional two projects with Deborah Taylor commencing in approximately May 2025 wherein the Debtor will receive approximately $767,000 over 21 months and a third home for Ms. Taylor to commence at or around April 2027 which will be for the same approximate amount, $767,000 over 21 months.

The debtor also reasonably forecasts a smaller project at or around June 2027 for expected payment to the debtor of $102,600 over 9 months.

The Debtor submits that these projections are reasonable and backed up by its performance post Covid over the past 2 years.

This Plan will pay allowed unsecured creditors a minimum total of $460,000 over 4 years -

$230,000 in year 1, $75,000 in year 2, $55,000 in year 3 and $100,000 in year 4. Debtor proposes to pay allowed unsecured creditors $100,000 from funds in the DIP account in month one on the Effective Date. A true and correct copy of the Plan Projections are attached as Exhibit "C". The Debtor further proposes to have a third party examine the viability of avoidance actions, which may add further funds to the Plan for distribution to unsecured creditors.

This is a conservative estimate as to the extent administrative expenses are minimized going forward, there could be an additional cash distribution from the DIP account and funds received form Chapter V avoidance actions and the pending litigation against various homeowners which the Debtor contends owe the Debtor funds.  The Debtor is seeking formal retention of David J. Winker to pursue such collection actions going forward. Mr. Winker was paid 25,000 from Mr. Mendez as a retention. Mr. Mendez received the $25,000 from the Debtor and was advised this was appropriate. The Debtor is requesting that the Court approve the retainer to Mr. Winker together with his retention, effective as of the date he commenced work on behalf of the Debtor. Mr. Winker has agreed to proceed on a 30% contingency basis going forward.

The litigation claims also include affirmative claims against and defenses to the claims  brought by the Codero's (POC 4, $3,186,992.30), Mason and Samantha Sharpe (POC 5, $161,026.82); Palmetto Warehouses (POC 6, $128,205.46) and Adriana Albornoz and Luciano Campos (POC 7, $276,107.99) and Trevor Taylor ( ( Collectively " Homeowner Creditors"). The Debtor's litigation claims against third parties total approximately $1,853,000.

Settlement Agreement-On or about April 16, 2024 the Debtor and the Homeowner Creditors executed a Settlement Agreement which required this second amendment to the Plan per the terms of the Settlement Agreement. The Settlement Agreement resolved all claims by and between the Homeowner Creditors and the Debtor, including stipulating to the amount of the claims without admission of liability or wrong or improper conduct by the Debtor and its principal and mutual releases except for the obligations under the Settlement Agreement and dismissal of pending litigation in state court. The Settlement Agreement also provides for an increased payment on the Effective Date of the Plan to general unsecured creditors in the total amount of $150,000, provides for a 15% variance on the budget expenses of the Debtor , a split of any income received by the Debtor over the projected income in the budget , with the Debtor receiving 90% and the general unsecured creditors receiving 10%,default and cure provisions, non-objections to release of avoidance claims against the Debtor's principal and Isable Mendez who received alimony payments during the past four years, amendment of the budget such that the line item for professional fees shall be increased to 1,250.00 per month for the purpose of the Debtor hiring a bookkeeper or accountant to assist in performing the reporting requirements set forth in paragraph 6 of the Settlement Agreement. The reporting requirements in paragraph 6 of the Settlement Agreement require the Debtor to provide the Homeowner Creditors with quarterly project budgets, Quarterly bank statements, G703 forms, copies of annual tax returns, copies of project contracts within 30 days of execution with the name of the client redacted and the contract subject to Homeowner Creditors attorney's eyes only, the maintenance of exclusive jurisdiction of the bankruptcy court to the implementation, interpretation  and enforcement of the Settlement Agreement. A true and correct copy of the Settlement Agreement is attached hereto as Exhibit "1" and incorporated herein.

The Debtor is in the process of retaining a new accountant to complete its  2019 -2024 tax returns as the prior accountant, Michale Linde and his company ceased representation. Accordingly, the Second Amended Plan may need to be amended further depending on the tax returns, however, it is not expected that there will be a material change in the Plan ,as amended.

The Debtor is seeking authority from the Court to utilize the residential property in Pinecrest as its office, however, if the request is not approved the Debtor will seek alternative office space  at the projected cost of $4,000 per month. The Debtor cannot adequately operate without appropriate office and storage as part thereof. The lease for the Pinecrest property is in the name of the Debtor's owner, Francisco Mendez.

The Debtor's operations are ongoing in a positive manner and this Plan will pay creditors substantially more than under a Chapter 7 liquidation. See Exhibit "A" to Plan (liquidation

analysis). As set forth in the Liquidation analysis, the distribution would be significantly less under Chapter 7. The Debtor's assets at the time of filing were valued at approximately $344,000.[1]

**The Plan payments will be made from net revenues (disposable income) over the life of the Plan, as well as any funds received from the litigation matters and Chapter 5 avoidable transfer actions.   The Debtor's projections attached are Exhibit "B" and "B-1"  to this Plan. The Distribution Schedule as to proposed Plan Payments is attached as Exhibit "C". A listr of the pending litigation claims is attached hereto as Exhibit "D".**

### B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as Exhibit "A". Allowed  General Unsecured creditors with allowed claims will be paid $ 460,000, plus any proceeds from litigation cases and avoidance actions ,over the life of the Plan, **approximately 8 %** of the gross amount of the claims filed which will be disbursed pro rata to allowed general unsecured creditors . See  Exhibit "C" to the Plan.

### C. Ability to make future plan payments and operate without further reorganization

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business.

The Plan Proponent has provided projected financial information as Exhibit "B", "B-1" and "C". (financial projections)

The Plan Proponent's financial projections show that,the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) sufficient to make plan payments as set forth in Article 1 below.

The final Plan payment is expected to be paid in March 2028.

In order to maximize the distribution to unsecured creditors, any indebtedness owed to insiders ( if any)  is subordinated until after completion of all Plan payments.

The Debtor will continue to be operated by the current owner and operator, Francisco Mendez.

There are sufficient funds in the Debtor's DIP account to pay the Administrative Claimants. Gamberg & Abrams received a retainer of 65,000 which, absent significant additional litigation after the hearing on the Motion to Convert, should be sufficient to satisfy Gamberg & Abrams. It is anticipated the Sub V Trustee will have fees in the amount of $20,000, which will include the request that her powers are expanded to investigate and make recommendations/report to the Court and the Debtor for the pursuit of any fraudulent or other avoidable transfers, including insiders to the Debtor except as provided in the Settlement Agreement. The Debtor has authorized the Debtor's counsel to pursue all transfers per its fiduciary duty as recommended by the Sub V Trustee, Ms. Aleida Martinez-Molina.

The assumptions made in the projections are in accordance with past experience, but accounting for the  changed retrial environment caused by Covid-19 and adjusted for cost reductions reasonably made due to the changed environment .
**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

---

[1] The Debtor initially believed there was $ 379,673 in the Debtors City National Bank account, however, there was only 309,908.67 as a deposit which accounted for the difference did not clear until October 13, 2024, one day after the bankruptcy filing.

**Article 1: Summary**

Case number

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of Pioneer Inter-Development, Inc. (the *Debtor*) from cash flow from operations.

This Plan provides for:

| | |
|---|---|
| 0 | class of priority claims[2]; |
| 0 | class of secured claims. |
| 1 | class of non-priority unsecured claims. |
| 1 | class of equity security holders. |

**The Class 1** Allowed General Unsecured Creditors **shall be paid $460,000 over the 4 year Plan period in accordance with Exhibit "C", which includes an initial $150,000 pro rata distribution on the Effective date of the Plan, as amended by this Second Amended Plan.**

**The Class 2    Equity shall maintain its equity ownership of the Debtor. Mr. Mendez owns 100% of the shares of the Debtor.**

**Administrative Claimants**

This Plan also provides for the payment of administrative and priority claims in full on the Effective Date. The Plan provides for investigation and report recommendation regarding Chapter V claims by the Sub V Trustee. However, the professionals may defer receipt of payment to assist with the confirmation process.

All creditors, Priority claimants and equity security holders should refer to Articles 1 through 4 of this Plan and the attached Distribution Schedule for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

**Article 2: Classification of Claims and Interests**

All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), ["gap" period claims in an involuntary case under § 507(a)(3),] and priority tax claims under § 507(a)(8)).

**2.01**    The Priority claim of the internal Revenue Service is subject to negotiation and possible objection subsequent to Debtor filing its tax returns for 2019-2024 which ~~are in process~~

2.02  **Class 1.............**              The Allowed General Unsecured Creditors

2.03  **Class 2...............**             The Equity Security Holder, Franscisco Mendez

**Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees**

[2] A priority tax claim (11 USC 507(a) (8)need not be classified under 11 U.S.C. 1123(a)(1).

| 3.01 | Unclassified claims | Under section § 1123(a)(1), administrative expense claims and priority tax claims are not in classes entitled to vote. The priority claims are listed in designated classes for ease of disclosure. |
|------|---------------------|-----|
| 3.02 | **Administrative expense claims** | Each holder of an administrative expense claim allowed under § 503 of the Code, will be paid under the Plan upon the terms set forth in Article 1 above. |

Debtor Name _____    Case number _____

3.03  **Priority tax claims**    Each holder of a priority tax claim will be paid as set forth above

3.04  **Statutory fees**  All fees, if any,  required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date. **Quarterly US Trustee fees are not paid in subchapter V Chapter 11 cases.**

3.05  Prospective quarterly fees NOT APPLICABLE IN THIS SUBCHAPTER V PLAN.

**Article 4: Treatment of Claims and Interests Under the Plan**

4.01 Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|-------|------------|-----------|

Priority claim of  the Internal Revenue Service is subject to negotiation and prospective objection.

Class 1 - Allowed General Unsecured Creditors **shall be paid over the 4 year Plan period in accordance with Exhibit "C", which includes an initial $150,000 pro rata distribution on the Effective date of the Plan, as amended. Additionally, any funds recovered from the litigation claims and avoidable transfer claims shall be disbursed by the Debtor to general unsecured creditors after payment into Debtor's counsels Trust account.**

☑ Impaired
☐ Unimpaired

Class 2 – Equity Security Holder shall maintain his equity interest in the Debtor .

☐Impaired
☑Unimpaired

**Article 5: Allowance and Disallowance of Claims**

5.01  **Disputed claim**

A *disputed claim* is a claim that has not been allowed or disallowed [by a final non- appealable order], and as to which either:

(i)  a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection;  or

(ii)  no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated

5.02 **Delay of distribution on a disputed claim**

No distribution will be made on account of a disputed claim unless such claim is allowed by a final non appealable order.

5.03 **Settlement of disputed claims**

The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

Debtor Name_____    Case number_____

**Article 6: Provisions for Executory Contracts and Unexpired Leases**

6.01 **Assumed executory contracts and unexpired leases**

The Debtor assumes, the following leases as of the effective date: The Executory contract with Ms. Deborah Taylor as to the GC work on her home which is in process.  No other leases or executory contracts are being assumed.

(a) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 20 days after the date of the order confirming this Plan.

Debtor Name_____    Case number_____

**Article 7: Means for Implementation of the Plan**

The Debtor shall fund the plan from its revenues received from the revenues derived from  its operations  which pursuant to its projections is sufficient to pay the plan payments on a timely basis. The Debtor shall also disburse any proceeds to unsecured creditors form recovery.

## PLAN FUNDING ASSURANCE

As of the Confirmation Date the Debtor shall have funds available in escrow with counsel in a sum equal to at least the first payment to unsecured creditors.

The Management  shall consist of the same persons who were on Management  at the time the chapter 11 case was filed; Francisco Mendez ,President   and  owner of the Debtor. His compensation shall be $117,000 per annum with 3% increases per year during the life of the Plan, plus $455 per month for health insurance and $155 per month for cell phone .

**Article 8: General Provisions**

**8.01  Definitions and rules of construction**

The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are  supplemented by the following definitions:

[Insert additional definitions if necessary].

**8.02  Effective date**

The Effective Date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

**8.03  Severability**

If any provision in this plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative fact of any other provision of this Plan.

**8.04  Binding effect**

The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

**8.05  Captions**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**8.06 Controlling effect**

Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of

Debtor Name_____    Case number_____

Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

[8.07 **Corporate governance**

Corporate Governance shall be consistent with Florida Law.

| [8.08 **Retention of Jurisdiction** | **Article XIII-** |
|---|---|
| | **Retention of Jurisdiction by the Bankruptcy Court** |

The Bankruptcy Court shall retain jurisdiction of these proceedings after Confirmation for the following purposes:

a. To enable the Debtor to consummate the Plan and any amended or modified Plan and to resolve any disputes arising with respect thereto;

b. To enable the Debtor to consummate any and all proceedings that it any bring prior to the entry of the Confirmation Order;

c. To determine all controversies relating to or concerning the classification, subordination, allowance, valuation or satisfaction of Claims;

d. To liquidate or estimate for purposes of allowance all contested, contingent or unliquidated Claims;

e. To determine the validity, extent and priority of all liens, if any, against property of the Estate;

f. To determine any assertions or an ownership interest in, the value of, or title to, any property of the Estate;

g. To determine any objections to Administrative Claims.

h. To determine any(i) adversary proceedings, contested or litigation matters brought before the Bankruptcy Court by the Debtor or the Reorganized Debtor;

i. Without limiting the generality of the preceding paragraph, to determine any Avoidance Action brought by the Debtor;

j. To determine all controversies arising out of any purchase, sale, or contract made or undertaken by the Debtor prior to the Confirmation Date;

k. To enforce all agreements assumed, if any, and to recover all property of the estate, wherever located;

l. To determine any tax liability of the estate in connection with the Plan, action taken, distributions or transfers made thereunder;

m To enforce any and all injunctions created pursuant to the terms of the Plan.

n. To modify the Plan or to remedy any defect or omission or reconcile any inconsistencies in the Plan either before or after the entry of the Confirmation Order;

o. To hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation or enforcement of the Plan;

p. To make such orders as are necessary or appropriate to carry out the provisions of the Plan.

Debtor Name_____                              Case number_____

**Article 9; Discharge:  Discharge of the Debtor as a corporation under Subchapter V**

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

> (i) imposed by this Plan; or
> (ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

> (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or
> (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure

**Article 10: Other Provisions**

## MODIFICATIONS TO THE PLAN

The Debtor may propose amendments or modifications to the Plan at any time prior to the Confirmation Date without leave of the Bankruptcy Court. After the Confirmation Date parties-in-interest may, with Bankruptcy Court approval and so long as it does not materially or adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and intent of the Plan.

## AMENDMENT OF CLAIMS

Claimants shall not be permitted to amend or otherwise modify any Claim after the Confirmation Date without leave of the Bankruptcy Court.

## CHAPTER V  RECOVERY CLAIMS AND AVOIDANCE ACTIONS

Debtor is requesting that the Court expand the powers of the Chapter V Trustee to investigate and report /recommend to the Court and Debtor as to claims which its is recommended be pursued. Debtor has

Debtor Name _____                              Case number _____

authorized its counsel to pursue any and all avoidance actions, including as to insiders.

## OTHER PROVISIONS

Payment of Gamberg & Abrams, Aleida Martinez -Molina and any other professionals retained by the estate and approved by the Court are subject to Application, Notice, Hearing and approval by the Court after such notice and hearing.

This Court shall have authority to temporarily close this case and reopen same without Debtor paying a case reopening fee subject to notice, hearing and court approval.

Aside from the initial payments on the Effective Date which shall be made by the Debtor's Counsel, the Debtor will make the payments under the Plan unless otherwise ordered by the Court

## BREACH AND REMEDIES

If the Debtor fails to make any payment, or to perform any other obligation under the Confirmed Plan for more than thirty (30) days after the time specified in the Plan for such performance, any member of an affected class may serve upon the Debtor and the Debtor's counsel a written notice of default. If the Debtor fails to cure the default, to obtain an extension of time to cure the default, or to file a motion with the Court for a determination that no default has occurred, within thirty (30) days after the date of service of the notice of default, the Debtor is in material breach under the Plan. Upon material breach, any member of an affected class may pursue its lawful remedies to enforce and collect the Debtor's pre-confirmation obligations, including seeking appointment of a chapter 11 trustee, dismissal or conversion of the case to a chapter 7 proceeding.

Dated:  April 22, 2024                        Respectfully submitted,

Pioneer Inter- Development, Inc.

By: _____
     Francisco Mendez, President/Owner

                              By:_____
                                   Thomas L. Abrams, Attorney for Debtor

## SETTLEMENT AGREEMENT

This settlement agreement ("Agreement") is entered into between Patricio & Ana Cordero (the "Corderos"), Mason & Samantha Sharpe (the "Sharpes"), Palmetto Warehouses, LLC ("Palmetto"), Trevor Taylor ("Taylor," with Corderos, Sharpes, and Palmetto, the "Homeowner Creditors"), Francisco Mendez ("Mendez"), and Pioneer Inter-Development, Inc. (the "Debtor" or "Pioneer") (collectively, the "Parties" and individually, a "Party"). This Agreement shall be the final, binding settlement agreement between the Parties, only subject to approval by the United States Bankruptcy Court for the Southern District of Florida (the "Court").

1.      Debtor shall file an amended plan within seven days of the execution of this Agreement. The Homeowner Creditors shall support the amended plan so long as it comports with the terms of this Agreement.

2.      The amended plan shall be for a term of four years.

3.      The budget for ECF No. 121, Ex. C (the "Budget") shall be amended such that the initial payment to the general unsecured creditors on the effective date of any confirmed plan shall be $150,000.00. The remaining $80,000 payment over year 1 shall be paid over the remaining three quarters. Payments to unsecured creditors for years 2 – 4 remain the same. The Debtor may prepay any amounts due and outstanding; however, it must be a lump sum payment of the then-remaining balance. The Debtor shall be allowed a 15% variance on the Budget expenses, as amended. If the Debtor exceeds the Budget expenses by 15% over a quarter, then that shall be a default under the plan, unless the Court allows the variance, after notice and hearing, or the Debtor's principal refunds the difference within the quarter or such other time as the Court may allow.

4.      Any income received by the Debtor over the projected income in the Budget shall be split between the Debtor and general unsecured creditors, with the Debtor receiving 90% and the general unsecured creditors receiving 10%. The amounts shall be payable on the first, second, third, and fourth anniversary of the effective date of the plan. If the Debtor prepays pursuant to Paragraph 3 above, then the Debtor shall no longer have to make these payments. The Debtor may prepay the amounts due and owing to the unsecured creditors under the Plan and Budget. Any amounts prepaid shall reduce the total amount due and owing to the unsecured creditors, but the quarterly payments shall continue to be paid pursuant to the Budget until the total amount due and owing to the unsecured creditors is paid.

5.      If the Debtor defaults on a plan payment, then the Debtor shall have 30 days to cure such default. No notice to the Debtor shall be required for such default. If the Debtor fails to timely cure any payment default, then the case shall be converted to a case under chapter 7 upon notice to the Court. Any material default of any other provisions under the plan shall constitute cause for conversion to a case under chapter 7.

6.      In connection with the Debtor's plan, the Debtor shall provide the following to the Homeowner Creditors:

- Quarterly project budgets;

FTL:DOCS 9131667 4

I

**EXHIBIT**

1

- Quarterly bank statements;

- G703 forms;

- Copies of annual tax returns;

- Copies of project contracts with schedule of value within 30 days of execution. The name of the client shall be redacted and the contract will be subject to attorneys' eyes only; however, the Homeowner Creditors may only receive copies of the schedule of value

7.      The Homeowner Creditors agree not to object to the Debtor's request for a release of avoidance claims in the plan against Isabel Mendez or Francisco Mendez. If this bankruptcy case converts to a case under chapter 7 for any reason, then any release of avoidance claims shall be null and void.

8.      The Homeowner Creditors' claims shall be allowed in the amounts filed, unless any of the Homeowner Creditors agrees to a reduced amount. Such claim allowance is not an admission of liability nor imputation of bad or improper conduct on the part of the Debtor or its principal and shall not be used as evidence in that regard

9.      Upon execution of this Agreement, each Party on behalf of itself and its respective partners, agents, assigns, heirs, officers, directors, employees, executors, attorneys, and accountants ("Affiliates") hereby forever and finally releases, relieves, acquits, absolves, and discharges the other Party and their Affiliates from any and all losses, claims, debts, liabilities, demands, obligations, promises, acts, omissions, agreements, costs and expenses, damages, injuries, suits, actions, and causes of action, of whatever kind or nature, whether known or unknown, suspected or unsuspected, contingent or fixed, that they may have against the other Party and their Affiliates, including, without limitation, claims for indemnification, based upon, related to, or by reason of any matter, cause, fact, act or omission occurring or arising at any moment prior to the execution of this Agreement. The Parties agree that the foregoing release is not intended to release, and shall not release, any obligations s of the Parties required under this Agreement. For the avoidance of doubt, this release shall not apply to Mariana Dubinsky, Peter Dubinsky, Deborah Taylor, or any other person or entity not a party to this Agreement, except as set forth in this paragraph.

10.     Within seven days of entry of a final, non-appealable order approving this Agreement, the Parties shall dismiss with prejudice any claims asserted against any other Party in any pending litigation, lawsuit, or arbitration. All pending motions in the Bankruptcy Court, including the Motion to Convert [DE 88, 89] shall be withdrawn, except for DE 168 (Motion for Contempt and Sanctions as to LMSOA et al). All such pending hearings and subpoenas shall be withdrawn and cancelled.

11.     The Debtor shall amend the Budget such that the line item for professional fees shall be $1,250. The Homeowner Creditors will not object to the Debtor incurring reasonable lease expenses, including first and last month rent for a new Debtor office.

FTLDOCS 9131667 4

2

12. The Parties shall not at any time publish any false, misleading, or disparaging statements about any other Party, their spouses, parent, subsidiary, affiliates, agents, and employees. A Party may pursue any available remedy for a breach of this provision, including, but not limited to, injunctive relief and damages.

13. The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties hereto, either previously or in connection with this Agreement shall be deemed or construed to be (a) an admission of the truth or falsity of any claims heretofore made or (b) an acknowledgment or admission by either party of any fault or liability whatsoever to the other party or to any third party.

14. Except as provided herein, the Parties shall each bear their own costs, expert fees, attorneys' fees, and other fees incurred in connection with this Agreement.

15. The Parties previously agreed to split the cost of the mediator.

16. This Agreement will be governed and enforced in accordance with the laws of the State of Florida, without regard to its conflict of laws principles. The Parties agree that any action for breach of this Agreement or to interpret or enforce this Agreement shall be brought in the United States Bankruptcy Court for the Southern District of Florida, Miami Division.

17. The rights and obligations of the Parties pursuant to this Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of the Parties.

18. The Debtor shall file a motion to approve this final Agreement on or before April 19, 2024

19. This Agreement shall be incorporated into Debtor's amended plan; however, this Agreement will not be subject to confirmation of such Plan.

20. In the event that any of the Parties commences a legal action to interpret or enforce this Agreement, then the prevailing party shall be entitled to reasonable legal fees, expert fees, and costs.

21. If this Agreement is not approved by the Bankruptcy Court, then this Agreement shall be null and void.

22. The Bankruptcy Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the interpretation or implementation of the order confirming the Debtor's plan.

Remainder of Page Intentionally Left Blank

FTL.DOCS 9131667 4

3

Executed this 16th day of April by:

_____
Patricio Cordero

_____
Ana Cordero

_____
Trevor Taylor

_____
Francisco Mendez

_____
Mason Sharpe

_____
Samantha Sharpe

Palmetto Warehouses, LLC

_____
Mason Sharpe, General Counsel

Pioneer Inter-Development, Inc.

_____
Francisco Mendez, President

FTL:DOCS 91316674

4

**Exhibit "A"** – Liquidation Analysis

**Plan Proponent's Estimated Liquidation Value of Assets**

**Assets**

| | | |
|---|---|---|
| a. | Cash on hand | $309,908.67 |
| b. | Accounts receivable | $0.00 ( Litigation claims are |
| c. | Inventory | contingent) |
| d. | Office furniture & equipment | $0 |
| e. | Machinery & equipment | $5,000 |
| f. | Automobiles | $0 |
| g. | Building & Land | $30,000 |
| h. | Customer list | $0 |
| i. | Investment property (such as stocks, bonds or other | $0 |
| | financial assets) | $0 |
| j. | Lawsuits or other claims against third parties | $0 |
| k. | Other intangibles (such as domain names, patent, | $ unknown /contingent |
| | software) | $  0 |
| l. | Deposits | |

**Total Assets at Liquidation Value**

**Less:**                                                                    **$344,908.67**

Secured creditors= recoveries
Less: Landlord Deposit                                          $0.00
**Less:**
Chapter 7 trustee fees and expenses                    $0
**Less:**
Chapter 11 administrative expenses                       $75,000
**Less:**
Priority claims, excluding administrative expense claims    $85,000,
**[Less:**
Debtor=s claimed exemptions]                               N/A

(1) Balance for unsecured claims in Chapter 7          $ 0

(2) Total dollar amount of unsecured claims            $ 269,908.67

$5,865,727 ( over 3,700,000
subject to prospective claim
objections)

**Percentage of Claims Which Unsecured Creditors Would
Receive Or Retain in a Chapter 7 Liquidation:
Approximately 4.5%**
**Percentage of Claims Which Unsecured Creditors Will
Receive or Retain under the Plan: Approximately 8%**

*The amount subject to recovery for avoidance actions and
litigation claims is contingent and considered equal in chapter
11 and chapter 7.*

Exhibit **"A"** -- Cash on hand on the effective date of the Plan (Estimated)

**Cash on hand on effective date of the Plan**: Approx $235,000.00[1]

*Less* B

| | |
|---|---|
| Amount of administrative expenses payable on effective date of the Plan. | $ unknown at this time |
| Amount of statutory costs and charges | $None |
| Amount of cure payments for executory contracts | **$ 0** |
| Other Plan Payments due on effective date of the Plan | |
| Balance after paying these amounts................ | $ 100,000 to unsecured creditors |

The sources of the cash Debtor will have on hand by the effective date of the Plan are estimated as follows:

| | |
|---|---|
| $ 213,000 | Cash in Debtor's bank account now |
| $ 22,000 | Additional cash Debtor will accumulate from net earnings and related entity cash between now and effective date of the Plan. |
| $235,000 | Total [This number should match "cash on hand" figure noted above |

---

[1] Plus disposition of funds in Sub v Trustees trust account, approximately $70,000 from Haber settlement

## EXHIBIT "B"

Projected Financials

|  | Projected Income to Debtor | Projected Expenses & Plan Payments |
|---|---|---|
| Year One: commencing April 2024- March 2025 | $ 512,258 | $361,224 |
| Year Two: commencing April 2025-March 2026 | $444,833 | $393,659 |
| Year Three: commencing April 2026-March 2027 | $438,636 | $407,225 |
| Year Four: commencing April 2027-March 2028 | $ 518,636 | $419,412 |

## EXHIBIT "B-1"
for Current Estimated Expenses and Revenues:

**Debtor is estimating an approximate 3% increase in revenues and expenses years 2 ,3 and 4 which  accounts for the increase in projected  expenses  in Exhibit "B" for years  2 ,3and 4**

**Pioneer**
**Plan Projections**

| | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 | Month 7 | Month 8 | Month 9 | Month 10 | Month 11 | Month 12 | YEAR 1 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | | | | | | | |
| | 41,128 | 41,128 | 41,128 | 41,128 | 41,128 | 49,678 | 49,678 | 49,678 | 49,678 | 49,678 | 49,678 | 8,550 | 512,258 |
| **Costs & Expenses** | | | | | | | | | | | | | |
| Payroll | 22,900 | 22,900 | 22,900 | 22,900 | 22,900 | 22,900 | 22,900 | 22,900 | 22,900 | 22,900 | 22,900 | 22,900 | 274,800 |
| Internet | 161 | 161 | 161 | 161 | 161 | 161 | 161 | 161 | 161 | 161 | 161 | 161 | 1,932 |
| Office Rent | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 48,000 |
| Office Supplies | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,000 |
| Professional Fee | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 15,000 |
| IT | 106 | 106 | 106 | 106 | 106 | 106 | 106 | 106 | 106 | 106 | 106 | 106 | 1,272 |
| Company Vehicle & Expenses | 725 | 725 | 725 | 725 | 725 | 725 | 725 | 725 | 725 | 725 | 725 | 725 | 8,700 |
| Software | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| Utilities | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 4,200 |
| Health Insurance | 455 | 455 | 455 | 455 | 455 | 455 | 455 | 455 | 455 | 455 | 455 | 455 | 5,460 |
| Phone | 155 | 155 | 155 | 155 | 155 | 155 | 155 | 155 | 155 | 155 | 155 | 155 | 1,860 |
| CLE/Licenses/Compliance | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2,400 |
| Misc | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2,400 |
| TOTAL COSTS & EXPENSES | 30,852 | 30,852 | 30,852 | 30,852 | 30,852 | 30,852 | 30,852 | 30,852 | 30,852 | 30,852 | 30,852 | 30,852 | 370,224 |
| | | | | | | | | | | | | | |
| Net Income | 10,276 | 10,276 | 10,276 | 10,276 | 10,276 | 18,826 | 18,826 | 18,826 | 18,826 | 18,826 | 18,826 | (22,302) | 142,034 |
| | | | | | | | | | | | | | |
| Beginning Balance | 165,078 | 25,354 | 35,630 | 45,906 | 56,182 | 39,792 | 58,618 | 77,444 | 96,270 | 88,429 | 107,255 | 126,081 | 165,078 |
| Cash Flow | 175,354 | 35,630 | 45,906 | 56,182 | 66,458 | 58,618 | 77,444 | 96,270 | 115,096 | 107,255 | 126,081 | 103,779 | 307,112 |
| Unsecured Creditors | (150,000) | | | | (26,666) | | | | (26,667) | | | (26,667) | (230,000) |
| Ending Cash Balance | 25,354 | 35,630 | 45,906 | 56,182 | 39,792 | 58,618 | 77,444 | 96,270 | 88,429 | 107,255 | 126,081 | 77,112 | |



**Pioneer**
**Plan Projections**

| | YEAR 1 | Month 13 | Month 14 | Month 15 | Month 16 | Month 17 | Month 18 | Month 19 | Month 20 | Month 21 | Month 22 | Month 23 | Month 24 | YEAR 2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | | | | | | | | |
| | 512,258 | 8,550 | 45,103 | 45,103 | 45,103 | 45,103 | 36,553 | 36,553 | 36,553 | 36,553 | 36,553 | 36,553 | 36,553 | 444,833 |
| **Costs & Expenses** | | | | | | | | | | | | | | |
| Payroll | 274,800 | 23,587 | 23,587 | 23,587 | 23,587 | 23,587 | 23,587 | 23,587 | 23,587 | 23,587 | 23,587 | 23,587 | 23,587 | 283,044 |
| Internet | 1,932 | 166 | 1,854 | 1,854 | 1,854 | 1,854 | 1,854 | 1,854 | 1,854 | 1,854 | 1,854 | 1,854 | 1,854 | 20,560 |
| Office Rent | 48,000 | 4,120 | 4,120 | 4,120 | 4,120 | 4,120 | 4,120 | 4,120 | 4,120 | 4,120 | 4,120 | 4,120 | 4,120 | 49,440 |
| Office Supplies | 3,000 | 258 | 258 | 258 | 258 | 258 | 258 | 258 | 258 | 258 | 258 | 258 | 258 | 3,090 |
| Professional Fee | 15,000 | 1,288 | 1,288 | 1,288 | 1,288 | 1,288 | 1,288 | 1,288 | 1,288 | 1,288 | 1,288 | 1,288 | 1,288 | 15,450 |
| IT | 1,272 | 109 | 109 | 109 | 109 | 109 | 109 | 109 | 109 | 109 | 109 | 109 | 109 | 1,310 |
| Company Vehicle & Expenses | 8,700 | 747 | 747 | 747 | 747 | 747 | 747 | 747 | 747 | 747 | 747 | 747 | 747 | 8,961 |
| Software | 1,200 | 103 | 103 | 103 | 103 | 103 | 103 | 103 | 103 | 103 | 103 | 103 | 103 | 1,236 |
| Utilities | 4,200 | 361 | 361 | 361 | 361 | 361 | 361 | 361 | 361 | 361 | 361 | 361 | 361 | 4,326 |
| Health Insurance | 5,460 | 721 | 721 | 721 | 721 | 721 | 721 | 721 | 721 | 721 | 721 | 721 | 721 | 8,652 |
| Phone | 1,860 | 160 | 160 | 160 | 160 | 160 | 160 | 160 | 160 | 160 | 160 | 160 | 160 | 1,916 |
| CLE/Licenses/Compliance | 2,400 | 206 | 206 | 206 | 206 | 206 | 206 | 206 | 206 | 206 | 206 | 206 | 206 | 2,472 |
| Misc | 2,400 | 206 | 206 | 206 | 206 | 206 | 206 | 206 | 206 | 206 | 206 | 206 | 206 | 2,472 |
| **TOTAL COSTS & EXPENSES** | 370,224 | 32,030 | 33,718 | 33,718 | 33,718 | 33,718 | 33,718 | 33,718 | 33,718 | 33,718 | 33,718 | 33,718 | 33,718 | 402,929 |
| | | | | | | | | | | | | | | |
| **Net Income** | 142,034 | (23,480) | 11,385 | 11,385 | 11,385 | 11,385 | 2,835 | 2,835 | 2,835 | 2,835 | 2,835 | 2,835 | 2,835 | 41,904 |
| | | | | | | | | | | | | | | |
| Beginning Balance | 165,078 | 77,112 | 53,632 | 65,017 | 51,402 | 62,787 | 74,172 | 52,007 | 54,842 | 57,677 | 60,511 | 38,346 | 41,181 | |
| Cash Flow | 307,112 | 53,632 | 65,017 | 76,402 | 62,787 | 74,172 | 77,007 | 54,842 | 57,677 | 60,511 | 63,346 | 41,181 | 44,016 | |
| Unsecured Creditors | (230,000) | | | (25,000) | | | (25,000) | | | | (25,000) | | | (75,000) |
| Ending Cash Balance | | 53,632 | 65,017 | 51,402 | 62,787 | 74,172 | 52,007 | 54,842 | 57,677 | 60,511 | 38,346 | 41,181 | 44,016 | |

**Pioneer**
**Plan Projections**

| | YEAR 1 | YEAR 2 | Month 25 | Month 26 | Month 27 | Month 28 | Month 29 | Month 30 | Month 31 | Month 32 | Month 33 | Month 34 | Month 35 | Month 36 | YEAR 3 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Ordinary Income/Expense | 512,258 | 444,833 | 36,553 | 36,553 | 36,553 | 36,553 | 36,553 | 36,553 | 36,553 | 36,553 | 36,553 | 36,553 | 36,553 | 36,553 | 438,636 |
| **Costs & Expenses** | | | | | | | | | | | | | | | |
| Payroll | 274,800 | 283,044 | 24,295 | 24,295 | 24,295 | 24,295 | 24,295 | 24,295 | 24,295 | 24,295 | 24,295 | 24,295 | 24,295 | 24,295 | 291,535 |
| Internet | 1,932 | 20,560 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 22,915 |
| Office Rent | 48,000 | 49,440 | 4,244 | 4,244 | 4,244 | 4,244 | 4,244 | 4,244 | 4,244 | 4,244 | 4,244 | 4,244 | 4,244 | 4,244 | 50,923 |
| Office Supplies | 3,000 | 3,090 | 266 | 266 | 266 | 266 | 266 | 266 | 266 | 266 | 266 | 266 | 266 | 266 | 3,189 |
| Professional Fee | 15,000 | 15,450 | 1,327 | 1,327 | 1,327 | 1,327 | 1,327 | 1,327 | 1,327 | 1,327 | 1,327 | 1,327 | 1,327 | 1,327 | 15,920 |
| IT | 1,272 | 1,310 | 112 | 112 | 112 | 112 | 112 | 112 | 112 | 112 | 112 | 112 | 112 | 112 | 1,347 |
| Company Vehicle & Expenses | 8,700 | 8,961 | 769 | 769 | 769 | 769 | 769 | 769 | 769 | 769 | 769 | 769 | 769 | 769 | 9,233 |
| Software | 1,200 | 1,236 | 106 | 106 | 106 | 106 | 106 | 106 | 106 | 106 | 106 | 106 | 106 | 106 | 1,273 |
| Utilities | 4,200 | 4,326 | 372 | 372 | 372 | 372 | 372 | 372 | 372 | 372 | 372 | 372 | 372 | 372 | 4,462 |
| Health Insurance | 5,460 | 8,652 | 743 | 743 | 743 | 743 | 743 | 743 | 743 | 743 | 743 | 743 | 743 | 743 | 8,912 |
| Phone | 1,860 | 1,916 | 165 | 165 | 165 | 165 | 165 | 165 | 165 | 165 | 165 | 165 | 165 | 165 | 1,978 |
| CLE/Licenses/Compliance | 2,400 | 2,472 | 212 | 212 | 212 | 212 | 212 | 212 | 212 | 212 | 212 | 212 | 212 | 212 | 2,546 |
| Misc | 2,400 | 2,472 | 212 | 212 | 212 | 212 | 212 | 212 | 212 | 212 | 212 | 212 | 212 | 212 | 2,546 |
| TOTAL COSTS & EXPENSES | 370,224 | 402,929 | 34,732 | 34,732 | 34,732 | 34,732 | 34,732 | 34,732 | 34,732 | 34,732 | 34,732 | 34,732 | 34,732 | 34,732 | 416,779 |
| Net Income | 142,034 | 41,904 | 1,821 | 1,821 | 1,821 | 1,821 | 1,821 | 1,821 | 1,821 | 1,821 | 1,821 | 1,821 | 1,821 | 1,821 | 21,857 |
| Beginning Balance | 165,078 | | 44,016 | 45,838 | 32,659 | 34,480 | 36,302 | 28,123 | 29,945 | 31,766 | 23,587 | 25,409 | 27,230 | 29,052 | |
| Cash Flow | 307,112 | | 45,838 | 47,659 | 34,480 | 36,302 | 38,123 | 29,945 | 31,766 | 33,587 | 25,409 | 27,230 | 29,052 | 30,873 | |
| Unsecured Creditors | (230,000) | (75,000) | | (15,000) | | | (10,000) | | | (10,000) | | | | (20,000) | (55,000) |
| Ending Cash Balance | | | 45,838 | 32,659 | 34,480 | 36,302 | 28,123 | 29,945 | 31,766 | 23,587 | 25,409 | 27,230 | 29,052 | 10,873 | |

**Pioneer**
**Plan Projections**

| | YEAR 1 | YEAR 2 | YEAR 3 | Month 37 | Month 38 | Month 39 | Month 40 | Month 41 | Month 42 | Month 43 | Month 44 | Month 45 | Month 46 | Month 47 | Month 48 | YEAR 4 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Ordinary Income/Expense | 512,258 | 444,833 | 438,636 | 36,553 | 36,553 | 44,553 | 44,553 | 44,553 | 44,553 | 44,553 | 44,553 | 44,553 | 44,553 | 44,553 | 44,553 | 518,636 |
| **Costs & Expenses** | | | | | | | | | | | | | | | | |
| Payroll | 274,800 | 283,044 | 291,535 | 25,024 | 25,024 | 25,024 | 25,024 | 25,024 | 25,024 | 25,024 | 25,024 | 25,024 | 25,024 | 25,024 | 25,024 | 300,286 |
| Internet | 1,932 | 20,560 | 22,915 | 1,967 | 1,967 | 1,967 | 1,967 | 1,967 | 1,967 | 1,967 | 1,967 | 1,967 | 1,967 | 1,967 | 1,967 | 23,608 |
| Office Rent | 48,000 | 49,440 | 50,923 | 4,371 | 4,371 | 4,371 | 4,371 | 4,371 | 4,371 | 4,371 | 4,371 | 4,371 | 4,371 | 4,371 | 4,371 | 52,456 |
| Office Supplies | 3,000 | 3,090 | 3,189 | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 274 | 3,288 |
| Professional Fee | 15,000 | 15,450 | 15,920 | 1,367 | 1,367 | 1,367 | 1,367 | 1,367 | 1,367 | 1,367 | 1,367 | 1,367 | 1,367 | 1,367 | 1,367 | 16,402 |
| IT | 1,272 | 1,310 | 1,347 | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 1,384 |
| Company Vehicle & Expenses | 8,700 | 8,961 | 9,233 | 792 | 792 | 792 | 792 | 792 | 792 | 792 | 792 | 792 | 792 | 792 | 792 | 9,505 |
| Software | 1,200 | 1,236 | 1,273 | 106 | 106 | 106 | 106 | 106 | 106 | 106 | 106 | 106 | 106 | 106 | 106 | 1,273 |
| Utilities | 4,200 | 4,326 | 4,462 | 383 | 383 | 383 | 383 | 383 | 383 | 383 | 383 | 383 | 383 | 383 | 383 | 4,598 |
| Health Insurance | 5,460 | 8,652 | 8,912 | 765 | 765 | 765 | 765 | 765 | 765 | 765 | 765 | 765 | 765 | 765 | 765 | 9,183 |
| Phone | 1,860 | 1,916 | 1,978 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 2,039 |
| CLE/Licenses/Compliance | 2,400 | 2,472 | 2,546 | 218 | 218 | 218 | 218 | 218 | 218 | 218 | 218 | 218 | 218 | 218 | 218 | 2,620 |
| Misc | 2,400 | 2,472 | 2,546 | 218 | 218 | 218 | 218 | 218 | 218 | 218 | 218 | 218 | 218 | 218 | 218 | 2,620 |
| TOTAL COSTS & EXPENSES | 370,224 | 402,929 | 416,779 | 35,772 | 35,772 | 35,772 | 35,772 | 35,772 | 35,772 | 35,772 | 35,772 | 35,772 | 35,772 | 35,772 | 35,772 | 429,263 |
| Net Income | 142,034 | 41,904 | 21,857 | 781 | 781 | 8,781 | 8,781 | 8,781 | 8,781 | 8,781 | 8,781 | 8,781 | 8,781 | 8,781 | 8,781 | |
| Beginning Balance | 165,078 | | | 10,873 | 11,654 | 12,435 | 11,216 | 19,997 | 28,779 | 7,560 | 16,341 | 25,122 | 3,903 | 12,684 | 21,465 | |
| Cash Flow | 307,112 | | | 11,654 | 12,435 | 21,216 | 19,997 | 28,779 | 37,560 | 16,341 | 25,122 | 33,903 | 12,684 | 21,465 | 30,246 | |
| Unsecured Creditors | (230,000) | (75,000) | (55,000) | | | (10,000) | | | (30,000) | | | (30,000) | | | (30,000) | (100,000) |
| Ending Cash Balance | | | | 11,654 | 12,435 | 11,216 | 19,997 | 28,779 | 7,560 | 16,341 | 25,122 | 3,903 | 12,684 | 21,465 | 246 | |



**EXHIBIT**

D

1. *Trevor Taylor v Debtor*
   Arbitration

2. *Adriana Albornoz v Debtor*
   2021-021976-CA-01

3. *Pioneer Inter-Development v Mason Sharp*
   2022-009962-CA-01

4. *Palmetto Warehouses LLC v Pioneer Inter-Development*
   2021-015640-CC-25

5. *Palmetto Warehouses LLC v Pioneer Inter-Development*
   2021-15635-CC-25

6. *Ana Cordero et al v Pioneer Inter-Development*
   2021-004217-CA-01

7. *Pioneer Architecture v Castillo*
   2020-027912 CA 01

8. *Pioneer Inter-Development v Vella et al*
   2020-022438-CA-01

9. *Novoa Electrical Contractors v. Pioneer Inter-Development*
   2018-12288-CA-01